HUBBARD *v.* SOUTHERN RY. Co.

[83 South. 247, In Banc. No. 20855.]

1. APPEAL AND ERROR. *An erroneous instruction harmless.*
   Where the defendant was entitled to a peremptory instruction, the plaintiff cannot complain that an erroneous instruction was given.

2. RAILROADS. *Duty to trespassers on track.*

A railroad owes no duty to a trespasser on its tracks except not
to willfully or wantonly injure him after discovering his pres-
ence on the track.

Appeal from the circuit court of Tishomingo county.
HON. J. W. P. BOGAN, Judge.

Suit by Paul Hubbard against the Southern Railway
Company. From a judgment for defendant, plaintiff
appeals.

The facts are fully stated in the opinion of the court.

*Jas. A. Cunningham,* for appellant.

Appellees in their brief try to justify the error of
the court in contending that the evidence was not
sufficient to show liability, and we will therefore submit
some remarks in this reply brief to that point not
touched upon in our original brief.

In the first the defendant company had the burden
of exonerating themselves from that presumption of
negligence raised by the statute. A careful reading of
the evidence of the colored fireman put on the witness
stand by the company in his cross-examination will
convince the mind of the court that his evidence was so
contradictory and so damaging to the company that
it showed liability instead of exoneration. Then ex-
amine the evidence of the company's engineer witness on
cross-examination and it will be seen that he admitted
that he had good lights and in good condition, and that
it was very dangerous to run a train in such place as
this is shown to be from the evidence, without being
on the lookout, and he admitted he could see a person
at least one hundred and fifty yards on the track. and
later admitted that he could see them much further and
admitted that he realized this particular stretch of the
road was in front of a hotel and summer resort and

much frequented by people upon the roadbed and he
also admitted that he was on the lookout until he had
passed the hotel front, and that when he passed the
hotel front, he was looking out down the track, and he
estimated that he kept on the lookout down this track
until he had passed the East wall of the hotel for
two hundred yards and admitted again, on the same
page that he never took his eyes off the track until he
had passed the trestle. This put him looking right upon
the drunken man as he lay upon the track. Two hun-
dred yards east of the hotel put him immediately upon
the scene of the killing. The trestle puts him far be-
yond the scene of the killing. This is a place very much
frequented, as the engineer admits. It is shown by the
record that a test was made and forty-three pedestrians
passed this place upon the track inside the space of an
hour, and that no special occasion caused the fre-
quency at this test. And the witness Hubbard testified
further that this had been the case ever since he could
recollect.

The evidence shows that this is a dump about twenty-
one feet high (Wright's evidence) and that this man was
injured less than two hundred yards east from the
east side of the hotel.

Evidence shows two things conclusively on this point.
One is that they ought to have been on the lookout at
such a place. The next is if they were on the lookout
they were bound to have seen this man lying upon the
track and it was for the jury to say whether they ex-
ercised care, or in fact did see the man in time to pre-
vent injuring him.

According to the witness Kier the man got his leg
cut off when he wasn't there, but we think the jury must
evidently have thought he was somewhere close around
when his leg was cut off. We earnestly insist that this
cause should be reversed and remanded for a new trial

under instructions which will not be confusing and mis-
leading to a jury.

*J. M. Boone,* for appellee.

It will be observed that the appellant does not assign
any error as to the verdict of the jury being contrary
to the evidence, makes no attack upon the instructions
granted appellee on the question of the appellee's
liability for the injury. Therefore, inasmuch as the
verdict of the jury was a general verdict, it must
stand, if it can be supported upon any theory of
the case; and we say that it is abundantly supported
on the theory that the evidence does not show
appellee guilty of any negligence contributing to the
injury of the appellant. And inasmuch as the jury
had a right to find for the appellant on this branch of
the case, and inasmuch as no complaint is made in the
brief of counsel as· to any instruction on this branch
of the case, and the jury could have so found indepen-
dent of what they believed about the release or its
procurement it would be necessary for the appellant
to assign as error that the verdict was contrary to the
law and the evidence on this branch of the case in order
for this court to even pass on that branch of the case.
This he has not done. We, therefore have a verdict with
an issue presented as to whether appellee was liable
under the evidence for the injury to appellant, separate
and distinct from the issue of settlement with appellant,
and whatever the court might think of the release
branch of the case, it must be affirmed on the issue of
liability.

This branch of the case· is not in any way affected
by ·the fifth instruction of the appellee, complained of
by the appellant, and the fifth instruction can be right or
wrong, yet the verdict of the jury stands. A reading of·

this record will demonstrate that the jury was right, if it meant by its verdict to say that the appellee was not liable for the injury to the appellant; this record shows appellant was evidently lying down on the ground at the end of the crossties and was not upon the track. The plaintiff is the only witness who testified on his side of the case on the merits of the case, and he states he was walking down in the middle of the track, and on cross-examination you will find that he did not remember anything about the situation, except he was walking down the middle of the track and falling as he attempted to step off. While it was clearly shown that he was drunk in the depot just before this injury, he knew nothing of that. That a train blew and torpedoes exploded just behind him, he heard nothing of that, but only remembered that which would be beneficial to him.

The case cited in appellant's brief does not in the most remote way touch this fifth instruction granted the appellee, as the instruction did not do more than touch upon the question of mental incapacity, and its effect only was to tell the jury to cut out the consideration of mental incapacity and pass upon the fraud in procuring the contract, and also pass upon the question as to whether or not appellee was liable for the injury to the appellant.

Referring again to the question of release, it will be noted that the testimony of Doctors Brown, Hodges and Carmack demonstrate that the medicine given to appellant could not possibly have had the effect claimed for it by some witnesses for appellant. I do not recall a case in my experience as a practicing lawyer that was more fairly and squarely presented to the jury than this case, and we submit it ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Appellant filed suit against the appellee for a personal injury resulting in the loss of one leg, said leg being run over and crushed by one of the engines operated by appellee. The injury occurred in the town of Iuka, Miss., at night. The appellant was traveling along the track of the said railroad in an intoxicated condition, and testified that he did not know that the engine was approaching until it was near him, and that then he made an effort to get off the track and fell down, and his leg was run over; that he was approached by the night watchman and told "if he didn't go home he would be locked up;" that he started down the railroad, which was the way he went home; that he was in the middle of the track and was just walking along and saw the train coming; he could not say how close the train was to him, and he undertook to get off the track and fell down, and the train ran over him.

The fireman and the engineer testified for the defendant. The engineer said he was operating the engine which ran over Hubbard, and that when he came into town he blew for the station signal and received a "proceed" signal; that the signal was to slow down and not stop; that an order was handed him, and he was reading the order going from the depot eastward at the rate of from three to four miles an hour, and when he finished reading the order he was in the act of giving the engine steam, when the fireman hallooed, "We are running into something;" that he did not see the man until the flagman hallooed. The fireman testified that, as the train proceeded from the depot eastward, he was firing the engine and, when he finished, looked up and saw something bright in the track which attracted his attention, and that on looking he saw the leg of the appellant on the rail and hallooed to the

engineer, and the train was stopped. as speedily as possible after discovering the appellant.

After the appellant was injured, the physician of the railway company attended the appellant and amputated his limb on the night of the injury. On the following day the appellant sent for an attorney and filed suit against the appellee for the said injury. Some days thereafter the claim agent of the appellee visited the appellant and obtained a statement from him as to the injury. Negotiations were opened between the claim agent and the appellant, and several offers made by the claim agent and rejected by the appellant; but finally, about two weeks after the injury, appellant signed a release in consideration of four hundrd dollars paid him, and dismissed the suit previously. filed. This release was pleaded by the defendant, and the plaintiff replied that the release was fraudulent and void. There was conflict of evidence as to the mental condition of appellant at the time of signing the release, but there is no conflict that he retained the money so paid him, and did not pay or tender it back before bringing the present suit. The last suit was brought August 18, 1917, and the injury occurred on the 13th of June, 1917. The court instructed the jury, among other instructions, as follows:

"The court instructs the jury for the defendant that, although they believe from the evidence in this case that plaintiff's mind at the time he made this settlement and signed this release was not sufficiently clear for him to understand the settlement he was making, yet if they further believe from the evidence that he received the money, and that afterwards his mind did become clear, and he then learned and knew that he had this money and also knew that it had been paid to him in settement of any claim that he might have against the defendant for the injury he had suffered, and they further believe he has retained said money, then this is

a ratification of said release, and is binding upon plaintiff, in so far as mental incapacity is relied upon to set aside said release.''

The appellant contends that this instruction is in conflict with the law as announced in *Jones* v. *Railway Co.,* 72 Miss. 22, 16 So. 379; *K. C. M. & B. Ry. Co.* v. *Chiles,* 86 Miss. 365, 38 So. 498; and *St. Louis, etc., Railway Co.* v. *Ault,* 101 Miss. 341, 58 So. 102. While the appellee contends that this question is supported by the case of *Railroad* v. *Turnbull,* 71 Miss. 1029, 16 So. 346. The railway company also asked a peremptory instruction which was refused by the court.

We deem it unnecessary to decide at this time whether or not the instruction above set out is erroneous. Conceding, but not deciding, that it is erroneous, we think it is harmless error, because the plaintiff failed to make out a case of liability. He was a trespasser upon the track of the defendant, and the defendant owed him no duty except not to willfully or wantonly injure him after discovering his presence on the track. The testimony is undisputed that the engineer and fireman did all they could to stop the train before the injury after they saw the plaintiff, but could not do so. The jury having found for the railway company, which led to the same result as the giving of the peremptory instruction would have led to, and as a peremptory instruction should have been given on the facts of this case, the judgment will be affirmed.

*Affirmed.*