KILLEBREW *v.* JACKSON CITY LINES, INC.

No. 39732　　October 10, 1955　　82 So. 2d 648

*Barnett, Jones & Montgomery,* Jackson, for appellant.

86

*Young & Daniel,* Jackson, for appellee.

88

APPELLANT IN REPLY.

GILLESPIE, J.

The appellant appeals from adverse judgment in his slander suit against the Jackson City Lines, and assigns several grounds for reversal. The appellee contends that it was entitled to a directed verdict, and, therefore, the jury returned the only verdict authorized by law. We state the facts most favorable to the appellant-plaintiff, inasmuch as we are of the opinion that appellee was entitled to a directed verdict.

Appellant was a bus operator for appellee. The security department of the parent company of appellee made a check of the appellee's operations, which was done from time to time in accordance with the company's policy. A written report of the results of this security check was made to appellee's superintendent of transportation. The person who made the security check was not known to the superintendent, but the head of that department of the parent company was known to the

superintendent. This report was kept by appellee's superintendent, Mr. Cortright, under lock and key, and no one was permitted to see it except Smith, the assistant superintendent. Cortright and Smith examined the report, and at Cortright's direction, Smith saw the appellant and told him Cortright wanted to see him in his office. Smith and appellant went to Cortright's office. The door was closed. Appellant was asked to be seated, after which Cortright told him, "Killebrew, you had two passengers on your bus paid their fares and it did not go through the box (a fare box that rings when the money goes through); that was on April 30th." Cortright then said, "Killebrew, you know what that means." He also told Killebrew that there was another check on May 4th when another fare was paid that did not go through the box. Killebrew then asked: "Mr. Cortright, are you saying that I took the money?" Cortright replied, "Yes, you took the money." Killebrew denied it. Cortright stated, "The money was never deposited in the fare box, you are bound to have taken the money, it was not deposited in the fare box, they paid the fare." Killebrew said: "They paid the fare and it was not deposited in the fare box, and I was bound to have taken the money; is that what you are saying?" Cortright answered "yes" and again stated, "You know what this means." The appellant said, "Yes, it means I'm fired." Cortright then replied, "Yes, and to save the company and you some trouble you can turn in your badge." They had some further conversation to like effect and appellee turned in his badge and quit his job.

Appellant inquired who told Cortright that he had kept the money and Cortright told him that one of the company checkers turned it in. Thereafter, appellant told those who had asked him why he was fired, and told in all about four hundred people. The office where all this took place was the one regularly used by Cortright and Smith in directing the operation of the appellee's business. The room was air conditioned. The walls were

about six inches thick and constructed of masonry. The door was one and three-quarters inches thick. There was a hole about the size of a half dollar in the wall between Cortright's office and the clerical office for a telephone cable. There was only one opening into the office, and that was a door leading into the clerical office in which there were several desks used by the ladies who worked for appellee. These desks were immediately outside and next to Cortright's office so that the persons sitting at these desks would be about eight feet from people sitting in Cortright's office, separated, of course, by the door and wall. Two ladies were working in the outer office on the occasion. Persons in the outer office could hear through the wall and door so that conversations had in Cortright's office could be heard in the outer office, at least in part. We think the proof in this regard would have authorized a finding that if one listened in the outer office, a conversation had in Cortright's office could be heard. The only two ladies who were in the outer office testified that they heard nothing of the conversation involved in this case. Appellant denied he ever took any fares and no proof was offered that he did, therefore, the charge that he took any fares was false as far as this record disclosed.

The question is: Were the alleged slanderous words spoken on an occasion of qualified privilege without malice and in good faith? If so, they were not actionable.

There can be no doubt that the occasion was one of qualified privilege. The words were heard only by appellant and Smith. Smith was Cortright's assistant. They were all directly interested in the matter. It was the duty of Cortright and Smith to protect the interests of their employer. Appellant was the subject of the discussion. He was entitled to know why disciplinary action was being taken as to his handling of the company's money. Cortright was performing his duty; and the place was appropriate. The law guards jealously the right to

the enjoyment of a good reputation, but public policy, good morals, the interests of society, and sound business demand that an employer, or his representative, be permitted to discuss freely with an employee, or his chosen representative, charges made against the employee affecting the latter's employment. ██ ██ On such occasions there is a qualified privilege, and statements made within the scope of the privilege, in good faith and without malice, are not actionable. ██ ██ The truth or falsity of the communication is not involved so long as there is no bad faith or malice. This case falls squarely within the rule as to qualified privilege. Scott-Burr Stores Corp. v. Edgar, 181 Miss. 486, 177 So. 766; Montgomery Ward & Co. v. Watson, 55 F. 2d 184; Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335; Louisiana Oil Corp. v. Renno, 173 Miss. 609, 137 So. 705.

██ ██ There was no proof of any actual or express malice. The jury could not have inferred malice or bad faith. The presumption of good faith goes with the privilege. The burden of showing bad faith or malice was cast upon the plaintiff. ██ ██ In the absence of proof that the words were spoken by motives of spite, ill will, malicious purpose or with a wanton and reckless disregard of whether the words were true or false, the privilege of the occasion was not destroyed. Louisiana Oil Co. v. Renno, supra; Scott-Burr Stores v. Edgar, supra.

We have considered the case of Kroger Grocery & Baking Co. v. Harpole, supra, wherein it was held that the circumstances were such that the witness Ramsey, who denied he heard the appellee charged with taking money, must have heard what was said, then there was presented a jury question on the question of publication. The Harpole case is not in point. Ramsey heard the conversation and was present within twenty feet of the speaker. The witness detailed the conversation but denied hearing the damaging part. The Court held: "It is clear

from Ramsey's testimony that he heard this conversation, and if defamatory words were spoken, he heard them.'' Thus a jury issue was made. We have no comparable situation in this case.

We have carefully considered the argument that Cortright exceeded the exigencies of the occasion. It is contended that Cortright could have called appellant into his office and fired him and this would have ended the entire matter; that Cortright's duty required him to do no more; that Cortright had no right to slander appellant in accomplishing the job of firing him. We cannot follow this argument for two reasons. First, in discipling appellant in the privacy of the superintendent's office, Cortright had the right to freely discuss the matter in which both had an interest. Killebrew had a right to know why he was being discharged, and it was the company's right to tell him. Secondly, Cortright simply related the facts as reported to him and never accused appellant of taking the company's money until appellant asked the direct question: ''Mr. Cortright, are you saying I took the money?'', to which Cortright replied, ''Yes, you took the money.'' Then followed other conversation in which Cortright explained that since the fares were paid and did not go into the fare box, he was bound to have taken the money. To the extent of the latter part of the conversation wherein appellant was accused of taking the money, the appellant invited the charge, and cannot claim he was thereby slandered. C.I.T. Corporation v. Correro, 192 Miss. 522, 6 So. 2d 588.

The case was submitted to the jury and a verdict was returned in favor of the defendant, the appellee here. We deem it unnecessary to examine into the instructions given the jury as to which appellant assigns errors. The appellee requested and was refused a peremptory instruction, which should have been given. The plaintiff having failed to make out a case, the judgment should be and

is affirmed. Hubbard v. Southern Ry. Co., 120 Miss. 834, 83 So. 247.

Affirmed.

*Roberds, P. J.,* and *Kyle, Lee* and *Ethridge, JJ.,* concur.