272 So.2d 925 (1973)
Tinsel HOOKS and Simplex Time Recorder Company, Defendants-Appellants,
v.
Curtis J. McCALL, Plaintiff-Appellee.
No. 46968.
Supreme Court of Mississippi.
February 5, 1973.
Watkins, Pyle, Ludlam, Winter & Stennis, Robert H. Weaver, C. Alton Phillips, Jackson, for defendants-appellants.
James G. McIntyre, Jackson, for plaintiff-appellee.
PATTERSON, Justice:
This is an appeal by Mrs. Tinsel Hooks and Simplex Time Recorder Company from a judgment of the Circuit Court of Hinds County in a slander suit wherein Curtis McCall obtained a verdict against them for $10,000. A remittitur of $5,000 was accepted by the plaintiff and it is from this judgment that the defendants appeal.
The record reveals that Robert Carrigan, a district manager of Simplex, came to this city to ascertain the cause of the large number of complaints his office had received concerning the management of the Jackson office. He arranged an interview with Mrs. Tinsel Hooks, the secretary of the Jackson branch office, who related to him her belief that certain employees, including Curtis McCall, were stealing parts and equipment of the corporation. This interview was conducted in an employer-employee relationship in private. One of the results of this interview was that the plaintiff was offered an option to continue *926 his employment with the company, but in a different area. Although the plaintiff initially agreed to accept the transfer, he did not do so due to the following occurrences.
Ray McCall, his brother, had previously supervised Simplex's activities in the area. He was also engaged in the operation of a bakery business which diverted much of his time and energies from his employment with Simplex. Carrigan, upon being advised by the plaintiff that Ray McCall was engaged in business other than that of Simplex, and was also a thief, directed plaintiff to disassociate himself from the activities of his brother. Thereafter, at a time when Carrigan and other employees were heavily engaged in reconstructing Simplex's business, the plaintiff came by Simplex's office to pick up a paycheck. This appearance occurred at the very time the plaintiff had advised Carrigan that he would be out of the city on vacation upon which he had made a substantial deposit. He was later observed in Ray McCall's place of business and shortly thereafter was discharged by Simplex for "showing a complete disinterest in the company."
After being discharged, the plaintiff alleged he was unable to obtain employment for some time and then only at a reduction in his income. The basis for this suit is the loss of employment and thus wages, allegedly caused by the slanderous utterances of Mrs. Tinsel Hooks, the secretary of Simplex.
There are several errors assigned on appeal. However, we confine this opinion to the contention that the alleged defamatory communication was qualifiedly privileged and therefore nonactionable.
In considering the testimony of the plaintiff we are unable to find any evidence that Mrs. Hooks communicated her belief that the plaintiff was stealing equipment belonging to Simplex to anyone other than Carrigan, her employer. In fact, she admits making the statements to him, but denies that they were communicated by her to others. The evidence most favorable to the plaintiff was his testimony as follows:
"Q. All right. Now, do you know what statements Mrs. Hooks made to Mr. Carrigan?
"A. The only statements that I know Mrs. Hooks made was the statement she made to Raymond Thompson, to Ray McCall and Marie McCall. And I asked her why she made these statements about me and she said she didn't have to answer to me.
"Q. The question was, do you know what statements she made to Mr. Carrigan?
"A. I was not present when Mr. Carrigan and her had a conference. I was not present when any of them had conferences with him but myself.
"Q. All right. Now, following Mr. Carrigan's conference with you on the morning of the 16th of July or thereabouts you were not discharged, were you?
"A. Mr. Carrigan had made remarks... .
"Q. (Interposing) Just answer.
"A. No, sir.
"Q. You were not discharged?
"A. I was still pending."
We note the answer was not responsive to the question, but giving it full value, it does not disclose any derogatory statements being made to persons other than Carrigan, her employer. We find no evidence to corroborate or support the plaintiff's allegations that he was discharged because of the utterances of Mrs. Hooks.
We are of the opinion that the statements to her employer were protected by the qualified privilege rule in that (a) the conversation took place in the privacy of Mrs. Hooks' home, (b) the interview was between an employer and employee in the course of corporate business concerning its Jackson office, and (c) no evidence was *927 produced to indicate the communication was made with malice or that it resulted in the plaintiff's discharge from his employment.
We have heretofore held that a qualified privilege exists between those directly interested in the same matter and in the absence of malice no cause of action lies. In Killebrew v. Jackson City Lines, 225 Miss. 84, 91-92, 82 So.2d 648, 649-650 (1955), we said:
There can be no doubt that the occasion was one of qualified privilege. The words were heard only by appellant and Smith. Smith was Cortright's assistant. They were all directly interested in the matter. It was the duty of Cortright and Smith to protect the interests of their employer. Appellant was the subject of the discussion... . Cortright was performing his duty; and the place was appropriate.... sound business demand that an employer, or his representative, be permitted to discuss freely with an employee, or his chosen representative, charges made against the employee affecting the latter's employment. On such occasions there is a qualified privilege, and statements made within the scope of the privilege, in good faith and without malice, are not actionable... .
In the earlier case of Louisiana Oil Corporation v. Renno, 173 Miss. 609, 618-619, 157 So. 705, 708 (1934), we held:
A communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith... .
There are certain occasions on which a man is entitled to state what he believes to be the truth about another, and in doing so public policy requires that he shall be protected, provided he makes the statement honestly and not for any indirect or wrong motive. Such occasions are called occasions of qualified privilege, for the reason that the protection is not absolute, but depends entirely upon the honesty of purpose with which the statement is made. Among such statements is one made on a subject-matter in which the person making it, and the person to whom it is made, have a legitimate common interest... .
We conclude the statements of Mrs. Hooks to her superior in furtherance of the business of the corporation were not shown to have been made with malice, either express or implied, and were therefore privileged and not actionable. We hold that the lower court erred in failing to sustain the defendant's motion for a peremptory instruction at the conclusion of the introduction of all of the evidence in the case.
Reversed and rendered.
RODGERS, P.J., and INZER, SMITH and ROBERTSON, JJ., concur.