339 So.2d 570 (1976)
Carolyn BENSON
v.
John E. HALL.
No. 48998.
Supreme Court of Mississippi.
November 23, 1976.
*571 Scales & Scales, Clarence R. Scales, Jackson, for appellant.
William A. Allain, Jackson, for appellee.
Before GILLESPIE, C.J., and SUGG and BROOM, JJ.
GILLESPIE, Chief Justice, for the Court:
Carolyn Benson sued John E. Hall in the Circuit Court of the First Judicial District of Hinds County alleging that Hall had composed and published two libelous letters concerning the plaintiff. The circuit court sustained a demurrer and dismissed the suit. Plaintiff appealed.
The plaintiff charged in her declaration that the defendant composed and published two letters which were in every particular false, misleading, defamatory, libelous, and unprivileged, and which exposed her to hatred and contempt, and injured her in her good name, reputation, and business. She charged in general terms that the letters were printed, published, and circulated by the defendant "with expressed and implied malice." No facts concerning malice were alleged. She charged that she was employed at Jackson State University by John E. Hall, the head or chairman of the Department of Reading, and that one letter was addressed to Dr. John A. Peoples, Jr., President of Jackson State University, with a copy to Vice President Williams, and the other letter was addressed to Lee M. Williams, Vice President for administration of Jackson State University. Copies of both letters were sent to the plaintiff. The two letters are as follows:
 May 11, 1974
 Dr. John A. Peoples, Jr., President
 Jackson State University
 Jackson, Mississippi
Dear Dr. Peoples:
Shortly after sending Vice President Williams the rating forms on the secretarial help in this department, I sent him a letter requesting that Miss Carolyn Benson not be assigned to this office with the beginning of the new year on July 1, 1974. I explained that Miss Benson does not have the skills essential in secretarial work.
In addition to lack of necessary skills, she cannot or will not follow simple directions; she is most disrespectful when questioned about not carrying out directions or requested to correct mistakes she has made; and she makes no effort to improve her work.
I told her before Christmas that her work would have to improve drastically if she intended to keep the position. She has made no effort, or if she has, she has not improved. Instead of being of some help in carrying on the work of this office, she has been a liability. If it had not been that the secretary employed in Right To Read was willing to assume extra duties, I don't know what we would have done. We simply cannot use Miss Benson next year.
 Yours truly,
 /s/ John E. Hall, Head
 Department of Reading
cc: Vice President Williams
 Miss Carolyn Benson
P.S. In order for you to get the vacation time due you for the time worked in this office, your vacation will begin on June

*572 22. In other words, June 21 will be your last working day in this department. Please collect your personal items to take with you when you leave, and turn your keys in to me on June 21.
 /s/ John E. Hall
* * * * * *
 May 23, 1974
Mr. Lee E. Williams
Vice President for Administration
Jackson State University
Jackson, Mississippi
Dear Mr. Williams:
If you have looked at the evaluation forms I sent to you rating the secretarial employees in this department, you will see that Miss Carolyn Benson is not qualified for the work. I told her some months ago that we could not use her after June 30, and advised her to be looking for another position.
In addition to being unprepared for the work in so far as secretarial skills are concerned, she cannot relate in a pleasant manner to the teachers. She is most disrespectful when they ask her to correct mistakes she has made; she cannot follow simple directions unless they are written; and she often refuses to do what is asked of her.
Please do not assign her to this department for another year. In fact, unless there is some place where she can work where she has nothing to do but make copies of something already done, she will not be of any use in any office on the campus.
 Yours truly,
 John E. Hall, Head
 Department of Reading
cc: Miss Benson
The Court is of the opinion that the trial judge correctly sustained the defendant's demurrer. The answers to the two questions next to be made are dispositive of the case.

I.
Were the letters written and mailed to the addressees on an occasion of qualified privilege?
This Court is committed to the rule that although the law guards jealously the enjoyment of a good reputation, public policy, good morals, the interests of society, and sound business principles demand that an employer, or his representative, should be permitted to discuss freely with an employee charges made against an employee affecting the latter's employment. On such occasions there is a qualified privilege, and statements made within the scope of the privilege, in good faith and without malice, are not actionable. Killebrew v. Jackson City Lines, Inc., 225 Miss. 84, 82 So.2d 648 (1955). In Killebrew the alleged slander occurred in conversation between the superintendent and the employee. The assistant superintendent was present. The Court held that the statement was not actionable because (1) the occasion was one of qualified privilege because the assistant superintendent and the employee (the only persons who heard the statement) were directly interested in the matter; (2) the truth or falsity of the communication was not involved absent bad faith or malice; (3) there was no proof of spite, ill will, malicious purpose, or a wanton or reckless disregard of whether the words were true or false. The Court also held that once the occasion is shown to be one of qualified privilege, there is a presumption of good faith.
The defendant in the instant case sent the letters in question to the President of the University and the Vice President for Administration. Copies were sent to the plaintiff. All of these people were directly interested in the subject matter of the letters for the same reasons stated in Killebrew.

II.
Did the defendant exceed the scope of the qualified privilege?
The declaration in the present case charges that the letters were composed and published by the defendant "with expressed and implied malice and with design and intent to injure the plaintiff," but no facts *573 were alleged, only conclusory statements. Edmonds v. Delta Democrat Publishing Co., 230 Miss. 583, 93 So.2d 171 (1957), is authority for the proposition that a charge in a libel suit that the defendant published libelous material "falsely and maliciously or with reckless disregard of the truth" without alleging any facts were mere conclusions of the pleader and were not admitted on demurrer.
It is charged in the declaration that in addition to the addressees the letters were read by "numerous other people who saw the same."
The cases and the text writers have not always distinguished between the question of whether the privileged occasion was exceeded on the one hand and whether the slander or libel was published on the other. For instance, in Cartwright-Caps Co. v. Fishel & Kaufman, 113 Miss. 359, 74 So. 278 (1917), the Court stated that dictation to a stenographer of an allegedly libelous letter by a businessman addressed to another businessman was not a sufficient publication of the letter to support a suit for libel. In Walter v. Davidson, 214 Ga. 187, 104 S.E.2d 113 (1958), the Court held that there was insufficient publication where communication is made between faculty members concerning students. Both cases confuse the defenses of qualified privilege and nonpublication. In our opinion, both cases in substance turned not on the publication issue but on the qualified privilege question.
When qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter. The qualified privilege may be likened to a circle insofar as its area of protection is concerned. Depending upon the circumstances, the circle encloses those people who have a legitimate and direct interest in the subject matter of the communication, and publication to them is not actionable. If publication is made to persons outside the circle  those not having a legitimate and direct interest in the subject matter of the communication  the protection of the privilege may not be invoked.
There is no allegation that the letters were publicly exhibited nor that any particular persons other than the addressees  who were within the protected circle  read them. The conclusory statement in the declaration that the letters were read by "... numerous other people who saw the same" was a mere conclusion of the pleader and was not admitted on demurrer. Edmonds v. Delta Democrat Publishing Co. supra.
We hold that there was no charge that the letters were published beyond the scope of the qualified privilege.
AFFIRMED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.