572 So.2d 378 (1990)
Betty Dee YOUNG
v.
Jerome JACKSON, Individually and in his Capacity as an Employee of Bechtel Construction, Inc.; Elbert Wilson, Individually and in his Capacity as an Employee of Mississippi Power & Light Company; Bechtel Construction, Inc.; and Mississippi Power & Light Company.
No. 89-CA-0249.
Supreme Court of Mississippi.
November 7, 1990.
Rehearing Denied December 19, 1990.
*379 Everett T. Sanders, Natchez, for appellant.
Roy A. Smith Jr., Holly R. Ratcliff, Daniel Coker Horton & Bell, Jackson, Edward C. Cohen, Natie P. Caraway, Wise Carter Child & Caraway, Jackson, for appellees.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This is yet another action arising out of the operations of the Grand Gulf Nuclear Power Station in Claiborne County, Mississippi.[1] This invasion of privacy action arises from a public disclosure of private facts and turns on whether the Defendants exceeded the limits of their privilege to allay employee fears of unanticipated contamination hazards. The Circuit Court *380 held Defendants' actions privileged and summarily dismissed Plaintiff's suit. For the reasons set forth below, we affirm.

II.

A.
Betty Dee Young lives in Fayette, Mississippi, in Claiborne County and in September of 1986 was employed as a decontamination laborer by Bechtel Construction, Inc., general contractor at Grand Gulf.[2] On the evening of September 21, 1986, Young and two other employees were working in a highly contaminated area. Each was wearing the requisite protective gear, "PC" suits and respirators. After ascending two flights of stairs, Young told her co-workers "... that [she] I was feeling faint and hot." One of them told her to sit down and that he would help her out of the outer layer of her radiation protection suit. Young lost consciousness and later said, "I don't remember anything [after that, until] we was halfway to the [Port Gibson] hospital."
It seems that earlier that year, Young's gynecologist had diagnosed her as suffering from a fibroid tumor and on July 10, 1986, four days after Young's thirty-third birthday, she entered the Jefferson Davis Hospital in Natchez, where Dr. Thomas Purvis performed a partial hysterectomy. This surgery greatly upset Young, in the sense that, in her words, "I'm half a woman now." She said she never told her husband of the nature of the surgery nor, insofar as the record reflects, had she told anyone at the power station.
Returning to September 21, Young remained in the Port Gibson Hospital overnight and upon her release the next morning, she says she received a telephone call from Jerome Jackson, a friend who was one her co-workers with Bechtel. According to Young,
I asked him what did he want. He said, "I need to know what kind of surgery did you have." I said, "Why do you need to know that?" He said, "NRC [Nuclear Regulatory Commission] and the safety man from Bechtel, Bill Lewis, needs to put it in your folder." I said, "Jerome," I said, "It's a personal operation I had. I don't want nobody to know." He said, "Won't nobody know but NRC and the safety man." So NRC would know Betty Young as a number. So I told him, "Please don't tell nobody. My husband don't know, and I don't want nobody to know it." And he told me that he wouldn't. He gave me his word that he wouldn't tell nobody, but the safety man and NRC. And he asked me what kind of operation again. And I said, "Jerome, you got to give me your word that you won't tell nobody." And he gave me his word, and I trust Jerome when he told me that. And the way he said it, that if I didn't tell him, I was going to lose my job. So I told him. I said a partial hysterectomy. He asked me how to spell hysterectomy, and I told him. He said, "Well, they'll know how to spell it." And he said, "Well, okay, I hope you feel better and be soon to come back to work."
Jerome Jackson tells a somewhat different story of how he came to know of Young's hysterectomy.[3] Jackson remembers that he visited Young either a couple of days or the day after the accident while she was hospitalized at the Jefferson County Hospital. Jackson and Young exchanged greetings, and Jackson said "Betty, everybody was pretty near worried about what really went on. The employees was asking me all types of questions. They was scared." Jackson says Young replied "Oh, Jerome, ain't nothing to worry about. I just got fainty sick from my operation." Young then related to Jackson that she had recently had a hysterectomy. Jackson does not recall saying anything about the Nuclear Regulatory Commission.
The record reflects that word spread quickly throughout Grand Gulf that Young had collapsed and had to be taken to the hospital. Without accepting Mississippi *381 Power & Light's characterization of the situation as a state of near hysteria, it is apparent that substantial rumors were afoot that Young was a victim of radiation and that many employees were worried whether they might be at risk as well. In this context, Jackson, a Bechtel employee, told Elbert (Bud) Wilson, one of his supervisors and an MP & L employee, that there wasn't anything to worry about because Young had passed out because of after-effects from her hysterectomy.
After lunch that day, Wilson called together all of the people that worked under him, all Young's co-workers, in the hope of squelching the rumors. Wilson told the workers that Young was fine as far as he knew, that she had received 200 millirems of radiation in the hair on her head, that the hospital had cut out the irradiated part of her hair, but that her hospitalization really had nothing to do with the radiation exposure but, instead, was related to a recent hysterectomy operation she had had "two to three weeks before."[4]
Meanwhile, Young was suffering from nausea and diarrhea and sought treatment at the Jefferson County Hospital in Fayette. That same day she was transferred to the Vicksburg Hospital where she remained through September 27, 1986. While she was in the Vicksburg Hospital, Young's sister, Margaret Alexander, told her that Elbert Wilson had informed Young's co-workers that she had had a hysterectomy approximately two weeks prior to the accident.
Subsequent to her discharge from the Vicksburg Hospital, Young was again hospitalized, this time at the Jefferson County Hospital from September 30, 1986, through October 11, 1986, where she was treated for post-radiation exposure, nausea, vomiting, diarrhea, cephalgia, and dehydration. Jackson visited Young on October 3, 1986, while she was hospitalized at the Jefferson County Hospital.

B.
On September 25, 1987, Young commenced the present civil action by filing her complaint in the Circuit Court of Claiborne County, Mississippi. Young named as Defendants Jerome Jackson, individually, and Bechtel Construction, Inc., his employer, Elbert Wilson, individually, and Mississippi Power & Light Company, his employer. Young claimed that she had a legally protected right to keep completely private the fact of her partial hysterectomy and that the Defendants had invaded that right and had disseminated information of her surgery, by reason of which Young claimed she had "suffered extreme humiliation and embarrassment and has suffered severe emotional distress."
In due course the Defendants answered, admitting their disclosure of the fact of Young's partial hysterectomy but defending, inter alia, on grounds that Mississippi law afforded them a privilege to do so and that they did not exceed the scope of the privilege. Extensive discovery followed via interrogatories and depositions. Thereafter, all Defendants moved for summary judgment and on February 1, 1989, the Circuit Court granted the motions and dismissed Young's complaint with prejudice. The Court held that with respect to the qualified privilege defenses there were no genuine issues of material fact and that the Defendants were entitled to judgment as a matter of law.
Young now appeals to this Court.

III.
The positive law of this state affords each person a substantial zone of freedom which, at his election, he may keep private. The zone surrounds person and place and without his consent may not be invaded by other persons, Deaton v. Delta Democrat Publishing Co., 326 So.2d 471, 473 (Miss. 1976), or by the state, In Re Brown, 478 So.2d 1033, 1039-40 (Miss. 1985). We have made no effort to identify the outer limits of a person's right of privacy and certainly make none here. Suffice it to say that where, as here, the invasion is *382 by private parties, we have recognized a right of action in at least three contexts: (1) the portrayal of Plaintiff in a false light, Prescott v. Bay St. Louis Newspapers, Inc., 497 So.2d 77, 79 (Miss. 1986); (2) appropriation of Plaintiff's likeness and unpermitted use, Candebat v. Flanagan, 487 So.2d 207, 209 (Miss. 1986); and (3) public disclosure of private facts, Deaton v. Delta Democrat Publishing Co., 326 So.2d at 473. It is this latter theorum that Betty Young invokes, and we accept its more precise statement in Restatement (Second) of Torts § 652D (1977):
One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
(a) would be highly offensive to a reasonable person, and
(b) is not of legitimate concern to the public.
Young claims the fact that she had undergone the surgical operation known as a partial hysterectomy was a private fact and that she had the right to keep that fact private, and that no one had the right to disclose that fact to the public.
MP & L responds that an action for invasion of privacy does not lie on these facts. We are told the right protects persons only from public disclosures that would be "highly offensive ... to a reasonable ... woman." No doubt an objective test obtains. A person may not be held liable for public disclosure of facts about another unless he should reasonably have foreseen that the person would be likely offended. It requires little awareness of personal prejudice and human nature to know that, generally speaking, no aspects of life is more personal and private than those having to do with one's sexual organs and reproductive system. It may be the fact that many women who have undergone a hysterectomy do not keep that fact secret, but this is not the test. We do not regard it unreasonable that a woman would consider the fact a private matter, nor unforseeable that she would so consider it.
Without further ado, we hold that the fact that she has undergone a hysterectomy is a fact that a woman ordinarily has the right to keep private if she wishes and that public disclosure of that fact by unauthorized persons and without her consent may be actionable.

IV.
The Circuit Court did not hold Young stated no claim but rather that, in the present state of the record, Defendants' qualified privilege defense prevailed as a matter of law. The defense of qualified privilege has long been accepted in our law of defamation, but we have had no occasion to consider it in an invasion of privacy context. The settings are certainly analogous. For example, we have recognized that the one-year statute of limitations applies in invasion of privacy actions, the same as in actions for libel or slander. City of Mound Bayou v. Johnson, 562 So.2d 1212, 1219 n. 7 (Miss. 1990); see also, Andrews v. GAB Business Services, Inc., 443 F. Supp. 510, 513 (N.D.Miss. 1977). In the present privacy context as well, we think it "more important that information should be given freely, than that a man should be protected from what under other circumstances would be an actionable wrong."[5] In their seminal article, Samuel Warren and (then lawyer) Louis D. Brandeis wrote
The right to privacy does not prohibit the communication of any matter, though in its nature private, when the publication is made under circumstances which would render it a privileged communication according to the law of slander and libel.[6]
In quite similar language the Supreme Court of Kansas has stated:
[C]ommunication or publication of a matter even of a private nature made, under circumstances which would render it a privileged communication according to *383 the law of libel and slander, will not support an action... .
Senogles v. Security Benefit Life Ins. Co., 217 Kan. 438, 536 P.2d 1358, 1361-62 (1975). We hold that actions for invasion of privacy are subject to the defense of privilege the same as defamation actions. See Prosser and Keeton on The Law of Torts § 117, at 868 & supp. 123 (5th ed. 1984); and Restatement (Second) of Torts, §§ 652F and 652G (1977).
Turning to the contours of the qualified privilege defense as it has evolved in the law of defamation, we can improve little on this Court's early statement:
A communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous ... There are certain occasions on which a man is entitled to state what he believes to be the truth about another, and in doing so public policy requires that he shall be protected, provided he makes the statement honestly and not for any indirect or wrong motive. Such occasions are called occasions of qualified privilege, for the reason that the protection is not absolute, but depends entirely upon the honesty of purpose with which the statement is made. Among such statements is one made on a subject-matter in which the person making it, and the person to whom it is made, have a legitimate common interest. [Citation omitted] The underling principle is public policy.
Louisiana Oil Corp. v. Renno, 173 Miss. 609, 618-19, 157 So. 705, 708 (1934).
Specifically, this Court has recognized that a public policy reason of the sort Louisiana Oil contemplates exists in the context of the employer/employee relationship. Staheli v. Smith, 548 So.2d 1299, 1305 (Miss. 1989); Holland v. Kennedy, 548 So.2d 982, 987 (Miss. 1989); Bush v. Mullen, 478 So.2d 313, 314 (Miss. 1985); Hayden v. Foryt, 407 So.2d 535, 536 (Miss. 1981); Benson v. Hall, 339 So.2d 570, 572 (Miss. 1976); Killebrew v. Jackson City Lines, 225 Miss. 84, 82 So.2d 648, 649-50 (1955); Gardner v. Standard Oil Co., 179 Miss. 176, 175 So. 203, 205 (1937); Louisiana Oil, 173 Miss. at 619, 157 So. at 707-08. Today's case arises in such an employer/employee context, and the statements concerning Young's hysterectomy were made against the backdrop of that relationship. The work at Grand Gulf was disrupted by rumors concerning Young's accident. Young's co-workers were concerned for her welfare, but for their own as well. Disclosing the true facts of Young's operation could reasonably have been seen likely to allay the fears of her co-workers of excessive levels of radiation present in the areas in which they worked.
The limitations of the employer/employee qualified privilege were delineated in Bush v. Mullen, 478 So.2d 313 (Miss. 1985).
[This privilege] is restricted both as to scope of and motivation for the communication. In Hooks v. McCall, 272 So.2d 925 (Miss. 1973), this Court held that "a qualified privilege exists between those directly interested in the same manner and in the absence of malice, no cause of action lies." [Hooks, 272 So.2d at 927.] In Benson v. Hall, 339 So.2d 570 (Miss. 1976), the Court, relying on Killebrew, held "When qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter." [Benson, 339 So.2d at 573.] Further, the opinion stated that "If publication is made to persons outside the circle  those not having a legitimate and direct interest in the subject matter of the communication  the protection of the privilege may not be invoked." Id. (emphasis added).
Bush, 478 So.2d at 314; see also Staheli, 548 So.2d at 1305-06; Holland, 548 So.2d at 987; Hayden, 407 So.2d at 536.
In considering whether this privilege has been exceeded, we must confront the fact that the Circuit Court decided the *384 question summarily. This Court reviews such rulings de novo, applying the same standards as the trial court was obliged to apply. Huff v. Hobgood, 549 So.2d 951, 953 (Miss. 1989); Short v. Columbus Ruber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988); Pearl River County Bd. of Supervisors v. Southeast Collections Agency, Inc., 459 So.2d 783, 785 (Miss. 1984). To obtain summary judgment these Defendants, as Movants and affirmative pleaders of the defense of qualified privilege, were obligated to show that there were no genuine issues of material fact and that there were entitled to judgment as a matter of law. Rule 56, Miss.R.Civ.P. The question in the end is like any other question presented via Rule 56. If the material facts are disputed, the motion must be denied and the case proceed. If the material facts are without dispute the court may act summarily, a point we recognized in an analogous context years ago.
The question of privilege is for the court on a given state of facts; if the facts are undisputed, the court decides the question and instructs the jury peremptorily; if the facts are disputed, the court submits the question to the jury to determine whether the necessary facts existed. [citations omitted]
Louisiana Oil Corp. v. Renno, 173 Miss. at 619, 157 So. at 708. See also Staheli v. Smith, 548 So.2d 1299, 1306 (Miss. 1989).
The record reflects without contradiction that Jackson told three persons of the fact of Young's hysterectomy. These are:
(1) Elbert Wilson, his co-defendant who, though an employee of MP & L, was Jackson's supervisor
(2) Bill Lewis, Bechtel safety director
(3) Lynn Nolan, Bechtel project superintendent
The record further reflects, without contradiction, that on the morning after Jackson told him of Young's hysterectomy, Wilson convened a meeting of persons working in the area and advised them that Young's collapse and hospitalization had not been due to radiation exposure but were associated with her earlier hysterectomy. In discovery Young was asked to identify by name each person to whom this information was communicated. Young listed Roosevelt Anderson, William Whittington, DeWitt Ellis, Robert Felton, Charles Kayo, Mattie Selman, Francis Neil, Charles Short, Matt Summers, Timothy Cliburn, John Bowser, Murdtis Hicks, Lang Provance, and Jerome Jackson. The record reflects without contradiction that each of these individuals was an employee at Grand Gulf and a co-worker with Betty Young.
Of course the mere fact that the persons Jackson and Wilson told of Young's hysterectomy worked at Grand Gulf does not in and of itself establish the defense. The occasion must be one which gives rise to the defense. The record before us reflects different persons giving differing expressions of the level of concern at Grand Gulf following Young's accident, but it is clear that there was substantial concern among some of the employees that Young's problems were related to radiation exposure and that they themselves may be in danger. The nature of radiation exposure and particularly the nature of the human fear of it are such that Defendants not only had the legal privilege but a moral duty to do what was necessary to allay anxieties.
Young in effect concedes as much but argues nevertheless that Defendants could have quieted worker fears by simply announcing that Young's condition was not radiation related. Young says it was not necessary that they go further and state that she had had a hysterectomy. The point called for an exercise of judgment and discretion by Jackson and Wilson and as well for us today. If Jackson and Wilson had told only that Young's condition was not radiation related, and said nothing more, the natural employee reaction would have been "well, what was it?" In the context of the nature of the workers' fear of radiation exposure, it seems that a "No" answer would have but generated further co-worker suspicions, that there was something afoot they were not being told. Prudence counselled full disclosure, and we think what Jackson and Wilson did was *385 within the realm of good judgment such that we should not judicially second guess them.
Young further seeks to avoid summary judgment by claiming malice on the part of Jackson and Young and, in the present setting, at least claiming that there was an issue of fact on her claim of malice. She asserts that because there are disputed facts concerning the manner in which Jackson acquired the knowledge of her hysterectomy operation, she has sufficiently adduced evidence to raise a factual question concerning malice. However, this Court's law requires a showing of actual malice:
Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with the design to willfully or wantonly injure another.
Scott-Burr Stores Corp. v. Edgar, 181 Miss. 486, 503-04, 177 So. 766, 770 (1938) (quoted in Hayden v. Foryt, 407 So.2d 535, 539 (1982)). When we review the record, however, evidence of ill will or spite on the part of Jackson or Wilson is nowhere to be found. That summary judgment is particularly appropriate concerning the issue of malice is supported by our law that finds that one who has established the existence of a qualified privilege is cloaked with a presumption of good faith. Benson v. Hall, 339 So.2d 570, 572 (Miss. 1976); Louisiana Oil, 173 Miss. at 620, 157 So. at 708.
The fact that Wilson stated that the operation was a hysterectomy, rather than a partial hysterectomy, that occurred more recently than Wilson thought, does not in any way destroy the qualified privilege. The truth or falsity of the qualifiedly privileged communication is not material as long as there is no bad faith or malice. Killebrew, 225 Miss. at 92, 82 So.2d at 650.
In conclusion, there is no evidence in this record that Defendants exceeded the scope of their privilege by communicating Young's private facts to persons who had no legitimate interest therein nor that any of the Defendants acted with malice toward Young. The Circuit Court correctly entered judgment summarily for Defendants dismissing Young's complaint.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON, PITTMAN and BLASS, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
SULLIVAN, Justice, dissenting:
I respectfully dissent.
Just as a man would not want his co-workers to know he had just had a testectomy, Young was mortified that her co-workers knew she recently had a partial hysterectomy. At the time the supervisor published the nature of Young's surgery to her co-workers, she had not yet had the emotional ability or courage to tell her husband. Reproductive surgeries are personal and private, and Young was justified in wanting to keep the nature of her surgery private. Though the employees were entitled to be assured Young's accident was not related to radioactive contamination, if in fact it was not, the publication in this case was excessive, unreasonable and reckless.
I agree with the majority that the communication was made under a qualified privilege. However, I do not accept the majority's finding that because the qualified privilege was not abused and there was no evidence of malice, the trial court properly granted summary judgment. The pre-trial evidence sufficiently created issues of material fact on whether the qualified privilege was abused and whether malice could be inferred from the conduct of the defendants, and these issues should have been submitted to a jury for their determination.
The majority found that the qualified privilege was not lost because "[d]isclosing the true facts of Young's operation could *386 reasonably have been seen likely to allay the fears of her co-workers of excessive levels of radiation present in the areas in which they worked," and "there is no evidence in this record that Defendants exceeded the scope of their privilege by communicating Young's private facts to persons who had no legitimate interest therein nor that any of the Defendants acted with malice toward Young."
A qualified privilege is not absolute. Elements requisite to uphold the qualified privilege protecting a communication are "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only... ." 50 Am.Jur.2d, Libel and Slander, § 195, pp. 698-99. (Emphasis added). 53 C.J.S. Libel and Slander, § 59 explains that "the communication must be limited to the scope of what is necessary to uphold the interest or duty, and the publication must occur in a proper and not an excessive manner, ..., and there must be good faith and an absence of malice." Id. at 113. (Emphasis added).
Thus, a qualified "privilege may be lost if it can be shown that the statements ... went beyond the subject matter or purpose of the occasion, or were excessively publicized to those... to whom the communication is not privileged." 53 C.J.S. § 77, p. 147. Restatement (Second) of Torts, Comment (a) § 596 also recognizes that a qualified privilege may be lost through abuse:
The privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (see §§ 600, 602); by the publication of the defamatory matter for some improper purpose (see § 603); by excessive publication (see § 604); or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (see § 605A). (Emphasis added).
In our state, there exist two ways to abuse a qualified privilege: (1) "excessive publication to persons not within the `circle' of those people who have a legitimate and direct interest in the subject matter of the communication," Staheli v. Smith, 548 So.2d 1299, 1305 (Miss. 1989) (cites therein); Holland v. Kennedy, 548 So.2d 982, 987 (Miss. 1989) (cites therein), and (2) publication beyond the scope of what is necessary. Garziano v. Du Pont De Nemours & Co., 818 F.2d 380, 391-92 (5th Cir.1987) (applying Mississippi law); Southwest Drug Stores of Miss., Inc. v. Garner, 195 So.2d 837, 840 (Miss. 1967); McCrory Corp. v. Istre, 252 Miss. 679, 173 So.2d 640, 646 (1965); Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 25 So.2d 572, 577 (1946); Sumner Stores of Miss. v. Little, 187 Miss. 310, 192 So. 857, 862 (1940). In McCrory Corp. v. Istre, 252 Miss. 679, 173 So.2d 640 (1965), we held that when a communication goes further than the interests or duties of the privilege holder require, the publisher will not be protected despite the fact "that a duty, a common interest, or a confidential relation existed to a limited degree ..., even though he acted in good faith." McCrory 173 So.2d at 646 [citing 53 C.J.S. Libel and Slander § 97, p. 53 (1948)]; see also, Garziano v. E.I. Du Pont De Nemours & Co., 818 F.2d 380, 391-92 (5th Cir.1987) (applying Mississippi law) (though no cause of action in the absence of malice when a communication is made to others who have a direct and legitimate interest, qualified privilege still may be abused by excessive publication).
Restatement (Second) of Torts, § 604 (1977) defines excessive publication as:
One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged. (Emphasis added).
Comment a: Ordinarily, a privilege is abused by speaking defamatory words in the presence of persons whose knowledge of them is unnecessary to the protection of the interest in question. However, this is not true when the publication *387 to those persons is reasonably incidental to the communication of the defamatory matter to the person whose knowledge is reasonably believed to be necessary or useful for the protection of the interest... . (Emphasis added).
The undisputed facts show that Young told her supervisor, Jackson, she did not want anyone to know of her surgery and that she had not even told her husband yet; that Young was promised by Jackson, that only the safety man and NRC would be told of her surgery; that Young did receive some radioactive contamination and returned to another hospital with nausea, vomiting and diarrhea; that Jackson told his supervisor, Bud, that he should not have told the "craft" that she had a hysterectomy; and that Jackson's supervisor, Bud, stated that Young's surgery really was not their [the company's] business. I agree with the majority that because the facts of this case are not in dispute that the trial court properly decided the question of privilege. Louisiana Oil Corp. v. Renno, 173 Miss. 609, 619, 157 So. 705, 708 (1934).
However, these undisputed facts are sufficient to allow a jury determination of whether the defendants reasonably believed notifying Young's co-employees that she had a hysterectomy was required in order to allay their fears, whether a lesser publication would have been sufficient and whether the extensiveness of the publication was reasonably incidental to the communication. See Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255, 285 (Miss. 1988) (undisputed facts created jury question regarding violation of attorney's fiduciary duty). Unless as a matter of law a jury could only find that the privilege was not exceeded or abused and that the publication was reasonably incidental, then these issues should have been presented to the jury. See Shutes v. Platte Chemical Co., 564 So.2d 1382, 1384 (Miss. 1990); Winstead v. Berry, 556 So.2d 321, 323 (Miss. 1989).
If the qualified privilege were found to have been abused or exceeded, only then should there be an inquiry whether the communication was published with malice. Without a showing of malice, abuse of a qualified privilege by an employer is not actionable. Staheli v. Smith, 548 So.2d 1299, 1305 (Miss. 1989); Holland v. Kennedy, 548 So.2d 982, 987 (Miss. 1989); Bush v. Mullen, 478 So.2d 313, 314 (Miss. 1985) [citing Killebrew v. Jackson City Lines, 225 Miss. 84, 91-92, 82 So.2d 648, 649-50 (1955)]; Hooks v. McCall, 272 So.2d 925, 927 (Miss. 1973) (citing Killebrew, supra). The demonstrated malice need not be express; it also may be common law malice, i.e., spite, ill will, malicious purpose and actual malice. Garziano v. E.I. Du Pont De Nemours & Co., 818 F.2d 380, 388, fn. 13 (5th Cir.1987) (applying Miss. law); see also, Staheli v. Smith, 548 So.2d 1299, 1305 (Miss. 1989). We also have recognized that malice may be inferred from willful and wanton disregard for the truth or falsity of defamatory words. Southwest Drug Stores of Miss., Inc. v. Garner, 195 So.2d 837, 842 (Miss. 1967) (cite therein); Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 25 So.2d 572, 577 (1946).
Our case law requiring a showing of malice before abuse of a qualified privilege is actionable has heretofore been applied in cases of defamation and slander, not publication of private facts. We have not previously considered whether ill will may be inferred by reckless disregard for another's rights and consequences to them. Because there may be some cases where the conduct of those abusing a qualified privilege is unreasonable and excessive, yet the conduct cannot be classed as express or actual malice, Galvin v. New York, New Haven & Hartford Ry. Co., 341 Mass. 293, 168 N.E.2d 262, 266 (1960), I would find that malice also could be inferred from the reckless disregard of Young's rights and the consequences of the publication to her. See Crump v. P & C Food Markets, Inc., 576 A.2d 441, 449 (Vt. 1990); McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 471 N.E.2d 47, 51 (1984) [citing Bratt v. Int'l Bus. Machines Corp., 392 Mass. 508, 515-16, 467 N.E.2d 126, 131 (1984)]; see also, Smith v. Dist. of Columbia, 399 A.2d 213, 221 (D.C.App. 1979) [citing Ford Motor Credit Co. v. Holland, 367 A.2d 1311 (D.C.App. 1977)], (Ill will defined as *388 "without just cause or excuse, `with such a conscious indifference or reckless disregard' of the results of his communication... ."). To hold otherwise will allow employers to thoughtlessly and recklessly divulge their employees' personal affairs causing them humiliation and emotional turmoil.
As with the determination of whether the qualified privilege was abused. I find that there was evidence by which a jury could infer malice due to the reckless disregard for the plaintiff's rights. The evidence presented issues of material fact and the trial court improperly granted the motion for summary judgment. I would reverse and remand for a jury trial.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] See Jim Murphy & Associates, Inc. v. LeBleu, 511 So.2d 886, 887 (Miss. 1987).
[2] Grand Gulf is operated by Mississippi Power and Light Company.
[3] As will presently appear, these differences are legally immaterial.
[4] Hospital documentation reflects that Young had her hysterectomy on July 10, 1986, some seventy-five "days ago." Again this factual discrepancy is without legal effect.
[5] Holmes, The Path of Law, 10 Harv.L.Rev. 457, 466 (1897).
[6] S. Warren & L. Brandeis, The Right To Privacy, 4 Harv.L.Rev. 193, 216 (1890).