548 So.2d 1299 (1989)
Albert C. STAHELI
v.
Allie SMITH.
No. 07-58567.
Supreme Court of Mississippi.
August 23, 1989.
*1300 John Paul Barber, David G. Hill, Hill & Lewis, Oxford, for appellant.
John H. Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
On February 26, 1986, Professor Albert C. Staheli (Staheli) filed suit in the Circuit Court of Lafayette County against Dean Allie Smith (Smith) alleging that Smith had defamed him in written recommendations against tenure and a pay raise, thereby, damaging his professional reputation. Smith filed a Motion for Summary Judgment on August 28, 1986. On March 30, 1987, final judgment was entered granting in full Smith's motion. Staheli raises four issues on appeal. In affirming, we address three of the four.

I.
Professor Staheli arrived at the University of Mississippi (the university) in the fall of 1977 and began teaching as an Associate Professor of Geology and Geological Engineering. The Geology Department is part of the School of Engineering. Smith is or was the Dean of the School of Engineering.
*1301 The policies and procedures on tenure at the university are set out in a university pamphlet entitled A Handbook for Faculty and Staff. With few limited exceptions, faculty members must complete a five-year "probationary" period before becoming eligible for tenure. "The status of tenure is reserved for members of the regular, fulltime teaching or research faculty who merit the status of permanent members of a university faculty through their teaching, research or service at the University." According to procedure, once a teacher is eligible he may apply and submit his portfolio for consideration. Tenured members of the candidate's department review that portfolio and cast advisory votes. The chairman of the department then gives an independent recommendation. If he or she recommends against tenure the process stops, subject to appeal to the faculty senate.
If the chairman recommends tenure, five more people review the candidate and his portfolio: the dean of the school of which the candidate's department is a part; the dean of the graduate school; the Vice-chancellor for Academic Affairs; the Executive Vice-chancellor; and, ultimately, the Chancellor. The tenure procedure provides that each person in this hierarchy is to recommend approval or disapproval and make "appropriate comment" before sending the application on to the next person. All administrators who were deposed agreed that this process is purely subjective. If the Chancellor disapproves tenure, the candidate may appeal to the faculty senate. However, after the senate decides the issue, the Chancellor is free to ignore that body's recommendation. The Chancellor's decision, then, is final.
Staheli became eligible in the fall of 1982. He submitted his application and the Acting Chairman of the Department of Geology and Geological Engineering, who was also the only tenured department member, highly recommended Staheli for tenure. Dean Smith was the next person to make a recommendation. In an undated letter, which everyone agrees was read by a third person no later than December 28, 1982, Smith recommended against tenure. Smith commented on Staheli's performance in four areas: teaching; research and grants; service; and, additional information. The language in several instances was quite strong. However, because we decide this case on issues other than the defamatory nature of the words employed, we need not set forth the particulars.
Every administrator after Smith recommended against tenure and the Chancellor denied tenure. Staheli appealed to the faculty senate, which in September, 1983, reviewed his file, and voted in favor of tenure. Against this vote, on October 21, 1983, the Chancellor again denied tenure.
In the spring of 1983, Smith recommended against a pay raise for Staheli. Smith first wrote to the academic vice-chancellor on April 29, 1983. The record does not indicate when, if ever, this letter was read by the vice-chancellor or any third party. With minor exceptions not pertinent to the lawsuit or this appeal, a virtually identical letter was requested by and delivered to the Chancellor on May 12, 1983. On the same day, May 12, 1983, a different academic vice-chancellor read this letter in Smith's presence. These letters repeated the criticisms included in Smith's recommendation against tenure and included even harsher language.
On May 17, 1984, Staheli filed suit in federal district court and included a pendent state law libel claim against all defendants. In an affidavit, Staheli avers that he did not have knowledge of the allegedly defamatory statements until members of the faculty senate told him in the spring of 1984 that his file included some derogatory comments. Staheli also claims that Dean Smith refused to let him see his tenure file. He did not see the recommendation and letters until August 29, 1984, when he obtained them through discovery in the federal litigation. The U.S. District Court for the Northern District of Mississippi declined to take jurisdiction of the pendent state law claim in November, 1985, and Staheli brought this suit on February 26, 1986.
*1302 In his motion before the trial court, Smith claimed that summary judgment was appropriate for five reasons:
1. Staheli was a public figure and offered no clear and convincing evidence of actual malice.
2. The statute of limitations had run.
3. Smith has governmental immunity.
4. The statements were not defamatory as a matter of law.
5. The statements were privileged because Staheli consented to the critical evaluation and to Smith's statement of his evaluation.
The trial court determined that summary judgment was appropriate for the first three of those five reasons.

II.

DID THE TRIAL COURT ERR IN RULING THAT STAHELI'S DEFAMATION ACTION WAS BARRED BY THE STATUTE OF LIMITATIONS?
This assignment of error raises a question of first impression in Mississippi. Should the discovery rule, similar to that applied in Mississippi in medical malpractice actions, be extended to certain "inherently undiscoverable" defamation actions? Staheli argues that while he would generally be barred by the defamation statute of limitations, he should not be barred in this case because he neither knew, nor could he in the exercise of reasonable diligence have discovered, that he had been defamed until members of the faculty senate told him that his tenure file contained derogatory comments.
Mississippi Code Annotated § 15-1-35 (Supp. 1988) provides:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
The general rule in Mississippi is that the statute of limitations begins to run from the date of publication of the allegedly libelous statement to a third person. Brocato v. Mississippi Publishers Corp., 503 So.2d 241 (Miss. 1987); Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So.2d 344 (1943); and, McCarlie v. Atkinson, 77 Miss. 594, 27 So. 641 (1900). In Forman, the Court, addressing what has come to be known as the "single publication" rule, included the following:
Since the gravamen of the offense is not the knowledge by the plaintiff nor the injury to his feelings but the degrading of reputation, the right accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident.
Forman, 195 Miss. at 107, 14 So.2d 344, citing McCarlie, supra. More to the point, in Wilson v. Retail Credit Co., Inc., 438 F.2d 1043 (5th Cir.1971), a per curiam opinion, the Fifth Circuit adopted the opinion of the U.S. District Court Southern District of Mississippi and held that under § 15-1-35 the plaintiff's cause of action, based on an allegedly libelous credit report, accrued one year after publication rather than one year after the plaintiff discovered the existence of the statement. Wilson, 438 F.2d at 1045.
The public policy of repose inherent in these statutes provides the reason and dictates an application of such policy in a case of this kind where the defendant owed the plaintiff no duty but to exercise good faith in a fair report of facts as revealed to them by their informants as it sought credit information about her.
In Wildmon v. Hustler Magazine, Inc., 508 F. Supp. 87 (N.D.Miss. 1980), the federal district court quoted the Fifth Circuit as follows:
"The goal of the single publication rule as to venue is to protect the defendant from a multiplicity of suits, from a continuous tolling of the statute of limitations, and from the application of diverse laws to a single event. See Prosser, Law of Torts § 113 (4th ed. 1971). Rather than accomplish these necessary goals through the jurisdictional statutes, however, they may be more logically effectuated *1303 through requiring the plaintiff to collect all his damages in a single action, measuring the running of the statute of limitations from the initial publication, see, e.g., Forman, supra, 195 Miss. at 107, 14 So.2d at 347 ..."
Wildmon, 508 F. Supp. at 89, quoting Edwards v. Associated Press, 512 F.2d 258, 264-65 n. 19 (5th Cir.1975).
Those states having directly addressed the discovery rule in defamation cases have generally applied it in those very limited situations where the allegedly libelous statement occurred in private or confidential publications, not readily available to the plaintiff or the public. Manguso v. Oceanside Unified School Dist., 88 Cal. App.3d 725, 152 Cal. Rptr. 27 (1979) (letter in teacher's permanent personnel file not inherently discoverable); Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill.2d 129, 334 N.E.2d 160 (1975) (distribution of credit reporting agency's report limited to subscribers makes statements contained therein inherently undiscoverable); Sears, Roebuck & Co. v. Ulman, 287 Md. 397, 412 A.2d 1240 (Md. App. 1980) (credit reporting agency's false report inherently undiscoverable until plaintiff applied for a credit account with a second retailer); White v. Gurnsey, 48 Or. App. 931, 618 P.2d 975 (1980) (libelous memorandum on employee was of a confidential nature not likely to have been discovered in exercise of reasonable diligence); Kelley v. Rinkle, 532 S.W.2d 947 (Tex. 1976) (credit agency report); Kittinger v. Boeing Co., 21 Wash. App. 484, 585 P.2d 812 (1978) (discovery rule applies to confidential business memoranda when plaintiff has no means, in the exercise of reasonable diligence, to discover the defamation); and, Burks v. Rushmore, 534 N.E.2d 1101 (Ind. 1989) (statute of limitations in defamation action based on alleged libel in a memorandum concerning plaintiff employee ran from the time plaintiff ascertained or by due diligence should have ascertained actionable damage). Only Hawaii applies the discovery rule without limitations in defamation actions. Hoke v. Paul, 65 Hawaii 478, 653 P.2d 1155 (1982).
In L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc., 629 F. Supp. 1425 (D.Conn. 1986), the federal district court held that the Connecticut statute of limitations in defamation actions began to run at the time of the act complained of, not when the plaintiff discovered or reasonably should have discovered the publication of the allegedly libelous credit report. The court distinguished Connecticut's statute which reads "within two years from the date of the act complained of" from those states' statutes reading "after the cause of action accrues (or has accrued)" and noted that it is only in those latter states that the discovery rule has been applied. Mississippi's statute uses the latter language. It should also be noted that Mississippi's statute covers a number of intentional torts and a plaintiff might be expected to have immediate knowledge that injury has occurred in all of those except limited instances of libel. See, MCA § 15-1-35 (Supp. 1988), supra.
We are convinced that the general policies underlying this statute of limitations will not be thwarted by adoption of the discovery rule in that limited class of libel cases in which, because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed. In such rare instances, we do not believe that a plaintiff can be accused of sleeping on his rights. The trial court erred in granting summary judgment on the basis of the statute of limitations. At the least, a jury issue was presented as to whether Staheli knew, or in the exercise of reasonable diligence should have discovered, that he had been defamed prior to the spring of 1984.

III.

DID THE TRIAL COURT ERR IN DETERMINING THAT STAHELI WAS A PUBLIC FIGURE WHO MUST PROVE ACTUAL MALICE?
Staheli argues that confidential internal employment recommendations are not of public concern and that, therefore, the First Amendment is not threatened, and the actual malice standard should not be *1304 applied. Staheli also argues that since these employment recommendations were not matters of public concern, he is not a vortex public figure. His argument then is that this is a case involving a private figure and a private concern.
There are two questions which must be answered in determining whether the actual malice standard should be applied in a given defamation case. The first is "Is the plaintiff a public official/public figure or a private figure?". The second is, "Regardless of the plaintiff's status, is the alleged defamation a matter of public concern or interest?". In New York Times, Inc. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that in defamation cases brought by a public official against critics of his official conduct, the First Amendment requires that the public official prove "actual malice", which is knowledge of falsity or reckless disregard of truth or falsity. In a footnote the Supreme Court stated:
We have no occasion here to determine how far down into the lower ranks of government employees the "public official" designation would extend for purposes of this rule, or otherwise to specify categories of persons who would or would not be included. [citation omitted]. Nor need we here determine the boundaries of the "official conduct" concept.
New York Times, Inc. v. Sullivan, 376 U.S. at 283 n. 23, 84 S.Ct. at 727 n. 23, 11 L.Ed.2d at 708 n. 23. In Hutchinson v. Proxmire, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), the Supreme Court held that a scientist, who was a state university adjunct professor, a director of research at a state hospital and who had received federal funds for research was not a public figure. The Supreme Court did not decide whether the plaintiff was a public official, but noted once again that not all state employees are public officials. Hutchinson, 443 U.S. at 119, n. 8, 99 S.Ct. at 2680 n. 8, 61 L.Ed.2d at 421 n. 8. We hold that the public employee in this case, a public university professor involved in geology research and grants, is not in that class of higher level, decision-making public employees such that he becomes a public official.
In addition to public officials, we recognize two more categories of public persons: public figures and quasi-public figures. Public figures are generally:
"... those who ... have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved ..."
Blake v. Gannett Co., Inc., 529 So.2d 595, 601 (Miss. 1988), quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789, 808 (1974). Staheli is clearly not a public figure for all purposes. We define the quasi public figure as, "... a person ... who is otherwise a private figure but who thrusts himself or becomes thrust into the vortex of a matter of legitimate public interest." Ferguson v. Watkins, 448 So.2d 271, 277 (Miss. 1984). Whether Staheli is a vortex public figure depends on whether his tenure and pay raise are issues of legitimate public interest.
In Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), five justices of the U.S. Supreme Court agreed that the actual malice standard applied to private individuals if the offending speech involved a matter of public concern or general public interest. Whether a particular debate involves a matter of public concern is "`determined by [the expression's] content, form, and context ... as revealed by the whole record.'" Dun & Bradstreet, 472 U.S. at 761, 105 S.Ct. at 2946, 86 L.Ed.2d at 604, quoting Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Staheli is not a vortex public figure because the issues involved are not matters of general public concern or interest. First, the "content" of the debate. The debate was over whether one individual *1305 university professor deserved tenure or a pay raise. Second, the "form" of the debate. The debate occurred in a very confidential setting and had a very limited audience. Third, the "context" of the debate. This was essentially an employment dispute. The fact that it occurred at a state financed university does not alter its character as such.
In light of the aforementioned case law and discussion, the trial court erred in holding Staheli to the "actual malice" standard.

IV.

DID THE TRIAL COURT ERR IN DETERMINING THAT DEAN SMITH WAS IMMUNE?
Staheli argues that Dean Smith loses his qualified governmental immunity because he exceeded his authority when he libeled Staheli. The faculty handbook provides that in making tenure recommendations the various administrators are authorized to make "appropriate" comment and Staheli's position is that the libel was "inappropriate" comment. Otherwise, it is undisputed that the standard for evaluation in the three areas, research, teaching, and service, is entirely subjective.
Staheli also makes an argument based on a qualified privilege which arises in libel cases in the employment setting. He argues that Smith is not entitled to the qualified privilege because the information was published outside the employment circle to the faculty senate.
When an individual who is a state governmental official is named as a defendant in a civil action, our law thus directs that he or she enjoy
no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort.
McFadden v. State, 542 So.2d 871, 877 (Miss. 1989), quoting Grantham v. Miss. Dep't. of Corrections, 522 So.2d 219, 225 (Miss. 1988). In the case at bar, we are not faced with a ministerial duty.
Under Mississippi defamation law, libel is not necessarily an intentional tort. A defamation claim requires that the plaintiff prove, among other things, "fault amounting at least to negligence on the part of the publisher". Blake v. Gannett Co., Inc., 529 So.2d 595, 602 (Miss. 1988). The first question then is, is there any evidence in the record that Smith intentionally stated a falsehood when he made his comments recommending against tenure? We have carefully reviewed the record and have found no such evidence. The second question is, did Smith greatly exceed his authority. The tenure procedure requests "appropriate" comment from those in the tenure track hierarchy. It can not be said that Smith greatly exceeded his authority. He included in his recommendation what he considered to be appropriate elements of consideration. Since the undisputed evidence is that tenure recommendations are subjective, Smith cannot be considered to have exceeded the scope of his authority in performing this discretionary duty.
There remains one last privilege to consider. This Court recognizes a qualified privilege in the employment context.
It is restricted both as to scope of and motivation for the communication. In Hooks v. McCall, 272 So.2d 925 (Miss. 1973), this Court held that "a qualified privilege exists between those directly interested in the same matter and in the absence of malice no cause of action lies." Id. at 927. In Benson v. Hall, 339 So.2d 570 (Miss. 1976), the Court, relying on Killebrew [v. Jackson City Lines, 225 Miss. 84, 82 So.2d 648 (1955)], held "When qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter." Id. at 573. Further, the opinion stated that "If *1306 publication is made to persons outside the circle  those not having a legitimate and direct interest in the subject matter of the communication  the protection of the privilege may not be invoked." Id.

Bush v. Mullen, 478 So.2d 313, 314 (Miss. 1985). There was no publication "outside the circle" as the faculty senate is included in the tenure process and Staheli brought the senate into the circle when he appealed the chancellor's decision. Furthermore, there is no showing in the record that Smith acted with malice.
The trial court was correct in granting summary judgment on the issue of qualified governmental immunity. The evidence shows that Smith acted within the scope of his authority both as a government employee and as a person in a position analogous to that of an employer.
Summary judgment was appropriate in this case because the Dean enjoys a qualified immunity, as a governmental employee, and a qualified privilege, in this employment context.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE P.JJ., and PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ROBERTSON, J., not participating.