[Cite as *Weidman v. Hildebrant*, 2022-Ohio-1708.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

THOMAS WEIDMAN, :

    Appellant, : CASE NO. CA2021-09-084

: O P I N I O N
- vs - 5/23/2022

:

CHRISTOPHER HILDEBRANT, :

    Appellee. :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21-CV-94019

Hemmer DeFrank Wessels PLLC, and Todd V. McMurtry and J. Will Huber, for appellant.

Taft Stettinius & Hollister LLP, and Russell S. Sayre, for appellee.

**HENDRICKSON, J.**

{¶1} Appellant, Thomas Weidman, appeals from the decision of the Warren County Court of Common Pleas granting summary judgment to appellee, Christopher Hildebrant, on Weidman's claims of defamation, intentional infliction of emotional distress (IIED), and false light invasion of privacy. For the reasons set forth below, we reverse the decision of the trial court and remand the matter for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

{¶2} This action involves the defamation of Weidman, a Sycamore Township trustee, by Hildebrant, a Cincinnati real estate developer. In 2011, Hildebrant was facilitating the sale of property owned by SDI Foods, Inc. to Sycamore Township, for which he would receive a consulting fee from both parties if the sale was successful. Hildebrant claims Weidman and Stanford Roberts, the individual who negotiated the sale for SDI, each repeatedly sought a kickback from Hildebrant's consulting fee after the sale occurred. In response to the pressure he felt from Weidman and Roberts, Hildebrant created a fictitious gmail account under the name tweidman12@gmail.com and, on December 20, 2011, sent an email to himself from the tweidman12@gmail.com account (the "2011 email"). The 2011 email portrayed Weidman as having received illicit payments and demanding bribes in exchange for his support of several real estate developments in Sycamore Township. On December 20, 2011, after creating and sending the 2011 email to himself from the tweidman12@gmail.com account, Hildebrant forwarded the email to Roberts. Hildebrant hoped that the email would demonstrate to Roberts that he did not have any money left to pay Roberts a bribe as Weidman had also demanded payment.

{¶3} Near the end of 2019, Hildebrant, acting on behalf of his development group, the Morelia Group-DE, LLC, sought to purchase a parcel of real estate owned by Sycamore Township (the "Sycamore Township Property"). Purchase of the property required the unanimous consent of the township's sitting trustees. This was problematic for Hildebrant, as Weidman opposed the sale of the property.

{¶4} On January 25, 2020, Hildebrant met with Sycamore Township trustee James LaBarbara and Sycamore Township Administrator Raymond Warrick at a golf club in Maineville, Ohio in order to discuss the purchase of the Sycamore Township Property. At that time, Hildebrant showed LaBarbara and Warrick the 2011 email sent from the

tweidman12@gmail.com account. Based on the email, and the insinuations of bribery therein, the Auditor for the State of Ohio was notified. The Auditor's Special Investigation's Unit ("SIU") launched an investigation into Weidman.

{¶5} During the course of the investigation, the SIU subpoenaed from Hildebrant any emails that contained correspondence between himself, Weidman, and SDI Foods, Inc. regarding the development of property in Sycamore Township in 2011. The 2011 email from the tweidman12@gmail.com account was turned over to investigators. In turning the document over, Hildebrant, represented by counsel, stated the following:

> CH [Hildebrant] has included in this response an email dated December 20, 2011 from an internet account noted on the face of the document as belonging to Mr. Weidman. This communication is included because this email was drafted by CH and Mr. Weidman jointly and sent by Mr. Weidman to CH so that CH could represent certain facts about an agreement between CH and Weidman to SDI Foods.

A little over two months later, Hildebrant, now represented by new counsel, sought to amend his response to the subpoena. In his amended response, Hildebrant stated that his "document production * * * includes an email dated December 20, 2011 from the email account tweidman12@gmail.com to the email account chris@moreliagroup.com. In order to avoid any misunderstanding, please be advised that this email was not written by Mr. Weidman. Mr. Hildebrant drafted this email and sent it to himself."

{¶6} On November 18, 2020, Weidman was interviewed by SIU investigators and, for the first time, learned of the tweidman12@gmail.com account and the December 20, 2011 email purportedly sent by him to Hildebrant. Weidman denied the authenticity of the email and email account, informing investigators that the email account did not belong to him and that he had not written the 2011 email. Though he asked for a copy of the 2011 email, he was not permitted to obtain a paper or electronic copy of the 2011 email until January 15, 2021.

{¶7} Subsequently, on February 17, 2021, Weidman filed a complaint against Hildebrant, asserting claims of defamation, IIED, and false light invasion of privacy relating to Hildebrandt's creation and publication of the 2011 email. Within his complaint, Weidman asserted that Hildebrant's actions were "undertaken with actual malice in that he intentionally lied through the Fake Email in an effort to destroy Weidman's political career, cause him psychic and emotional injuries, and possibly bring him under criminal investigation." Weidman further claimed Hildebrant's actions placed him in a false light and Hildebrant's outrageous and extreme conduct was intended to inflict embarrassment, psychic injury and psychological pain and suffering on him.

{¶8} Hildebrant filed an answer in which he admitted that he created the 2011 email and shared it with LaBarbara and Warrick, but he denied the remaining allegations in the complaint. Hildebrant's answer set forth a variety of affirmative defenses, including that Weidman's claims were barred by the statute of limitations.

{¶9} On May 17, 2021, Hildebrant moved for summary judgement on all of Weidman's claims, arguing the claims had been "time-barred for many years" due to the expiration of a one-year statute of limitations as set forth in R.C. 2305.11(A). Hildebrant contended that the email that formed the basis of Weidman's claims was first published on December 20, 2011, nearly a decade before the complaint was filed. He further argued that even if the date of the email's publication to LaBarbara and Warrick was used (January 25, 2020), Weidman's claims were still time-barred as the complaint was not filed until February 17, 2021, more than a year later. Hildebrant contended the one-year statute of limitations for defamation claims also applied to Weidman's IIED and false light invasion of privacy claims since the claims were closely tied and premised on the defamation claim.

{¶10} Hildebrant supported his motion for summary judgment with his own affidavit and affidavits from LaBarbara and Warrick. In his affidavit, Hildebrant admitted that he

created the December 20, 2011 email and forwarded the email to Roberts on that date. He further admitted he showed LaBarbara and Warrick the 2011 email on January 25, 2020, when the men were at a golf club discussing the Morelia Group-DE, LLC's desire to purchase property owned by Sycamore Township. Warrick's and LaBarbara's respective affidavits stated that they were shown the 2011 email by Hildebrant on January 25, 2020.

**{¶11}** Weidman filed a memorandum in opposition to Hildebrant's motion for summary judgment, arguing that the "discovery rule" applied to toll the one-year statute of limitations since the publication of the defamatory statements had been done in secret and he had not learned of Hildebrant's wrongful conduct until November 18, 2020. While acknowledging there were a number of Ohio cases that refused to apply the discovery rule to defamation claims, Weidman argued the rule should be applied to a defamation claim where the publication of the defamatory statement was done in secret. In support of his position for expanding the discovery rule to such cases, Weidman relied on the Sixth District Court of Appeals' decision in *Dipillo v. Cashen*, 6th Dist. Wood No. WD-83-23, 1983 Ohio App. LEXIS 11595, a number of cases decided by the Ohio Supreme Court where the discovery rule was found to have applied to causes of actions that did not accrue until the plaintiff discovered, or through the exercise of reasonable diligence should have discovered, that he or she had been injured by the wrongful conduct of the defendant, and case law from other states that applied the discovery rule to defamation claims. Weidman further argued that the fraudulent concealment doctrine should be applied to toll the initiation of the statute of limitations as Hildebrant engaged in fraud and a course of conduct intended to conceal evidence of his wrongdoing from others.

**{¶12}** Weidman attached his own affidavit to his memorandum in opposition to summary judgment. In his affidavit, Weidman attested that the first time he discovered the existence of the 2011 email was when he met with investigators from the Auditor's Office

on November 18, 2020. He further stated that this meeting was "the first time I discovered that Christopher Hildebrant created a fake email address to impersonate me and deceive others." Attached to his affidavit was a partial transcript of his interview with investigators from the Auditor's SIU.

{¶13} The trial court held a hearing on Hildebrant's motion. Subsequently, on November 1, 2021, the trial court granted Hildebrant's motion for summary judgment after finding that Weidman's claims were barred by the one-year statute of limitations set forth in R.C. 2305.11(A). In entering judgment for Hildebrant, the trial court explicitly found that the discovery rule and the fraudulent concealment doctrine did not apply, concluding that "defamation cases are not subject to equitable tolling." In reaching its decision, the trial court relied on an opinion from the Eighth District Court of Appeals which held that "the mere fact that the subject of the alleged defamation does not discover the statements until after the running of the statute of limitations is of no legal consequence." *Rowan v. Schaffer*, 8th Dist. Cuyahoga No. 107687, 2019-Ohio-3038, ¶ 3. The trial court further determined that Weidman's false light invasion of privacy and IIED claims were barred by the one-year statute of limitations, as the claims "hinged on the Defendant's publication of the 2011 email" and were "the same as the defamation claim."

## II. THE APPEAL

{¶14} Weidman appeals the trial court's decision, raising the following assignment of error:

{¶15} THE TRIAL COURT ERRED IN GRANTING HILDEBRANT'S MOTION FOR SUMMARY JUDGMENT.

{¶16} This court reviews a trial court's summary judgment decision under a de novo standard. *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7. Summary judgment is appropriate under Civ.R. 56 when (1) there is

no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his favor. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998).

{¶17} The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Anderson v. Jancoa Janitorial Servs.*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Sexton* at ¶ 7; Civ.R. 56(E).

{¶18} In his sole assignment of error, Weidman argues the trial court erred in granting Hildebrant summary judgment on the defamation, IIED, and false light invasion of privacy claims on the basis that they were time-barred by a one-year statute of limitations. With respect to his defamation claim, Weidman argues that the discovery rule or, alternatively, the fraudulent-concealment doctrine applies to save his claim.

**A. Weidman's Defamation Claim**

{¶19} "Defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession." *Drone Consultants, LLC v. Armstrong*, 12th Dist. Warren Nos. CA2015-11-107 and CA2015-11-108, 2016-Ohio-3222, ¶ 28, citing *Becker v. Internatl. Assn. of Firefighters*

*Local 4207*, 12th Dist. Warren No. CA2010-03-029, 2010-Ohio-3467, ¶ 9. "*Any* act by which the defamatory mater is communicated to a third party constitutes publication." (Emphasis sic.) *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993), citing 3 Restatement of the Law 2d, Torts, Section 577(1), Comment a (1965). There are two forms of defamation: slander and libel. "The term slander refers to spoken defamatory words and libel to written defamatory words." *Drone Consultants* at ¶ 28, citing *Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 27. The present case involves the latter form of defamation, as the case involves written defamatory words in the 2011 email.

{¶20} Pursuant to R.C. 2305.11(A), "[a]n action for libel * * * shall be commenced within one year after the cause of action accrued * * *." "Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Norgard v. Brush Wellman*, 95 Ohio St.3d 165, 2002-Ohio-2007, ¶ 8. In the context of a libel action, the cause of action usually accrues when the written words are first published. *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914, ¶ 82 (12th Dist.). Weidman, however, argues that the discovery rule should apply to his defamation claim. The discovery rule is an exception to the general rule that a cause of action accrues at the time the wrongful act was committed. Under the discovery rule, "a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Norgard* at ¶ 8, citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983). The discovery rule, therefore, "entails a two-prong test – *i.e.,* discovery not just that one has been injured but also that the injury was 'caused by the conduct of the defendant' – and * * * a statute of limitations does not begin to run until both prongs have been satisfied." *Id.* at ¶ 9, quoting *O'Stricker* at 86.

{¶21} A number of Ohio's appellate courts have expressly declined to apply the

discovery rule to a cause of action for defamation, finding that the cause of action accrues upon first publication of the defaming statement. *See Rowan v. Schaffer*, 8th Dist. Cuyahoga No. 107687, 2019-Ohio-3038, ¶ 3-4 (holding that the discovery rule "does not toll the one-year limitations period for defamation claims" and that "[t]he mere fact that the subject of the alleged defamation does not discover the statements until after the running of the statute of limitations is of no consequence"); *Kienow v. Cincinnati Children's Hosp. Med. Ctr.,* 1st Dist. Hamilton No. C-140720, 2015-Ohio-4396, ¶ 8 (holding that "there is no discovery rule for defamation"); *Reed v. Jagnow,* 7th Dist. Mahoning No. 12 MA201, 2013-Ohio-2546, ¶ 25 (holding that "there is no discovery rule for defamation"); *Lyons v. Farmers Ins. Group of Companies*, 67 Ohio App.3d 448, 450 (3d Dist.1990) (declining to apply the discovery rule to a defamation-by-slander claim). Those appellate courts that have declined to apply the discovery rule to defamation claims cite to case law that can be traced back to an 1894 case originating out of the Superior Court of Cincinnati, *Pearl v. Koch*, 5 Ohio Dec. 5, 1894 Ohio Misc. LEXIS 192 (1894).[1]

**{¶22}** In *Pearl*, the court considered when the statute of limitations for an action for slander commences to run. At the time, the applicable statute of limitations, Section 4983, provided that an action for slander must be commenced within one year after the cause of action accrued. *Id.* at 6. The court found it was constrained by the statute to reject the date the injured party learned of the defamatory statements as the date of accrual. The court stated, in relevant part, that "[S]ec. 4983 declares in express terms that an action for libel or slander shall be commenced in one year. In a court of law, the statute must receive a strict construction, and an exception can not be introduced which the legislature has not

---

1. In 1921, the Superior Court of Cincinnati was incorporated into the common pleas court. *See State ex rel. Forchheimer v. LeBlond*, 108 Ohio St. 41, 45 (1923) (Pursuant to Section 6 of the act of April 29, 1921, 109 Ohio Laws 354 [1921], "[t]he power and jurisdiction conferred upon the superior court of Cincinnati by virtue of Section 15098 of the General Code is hereby terminated and abolished, and the same is vested in the court of common pleas of the county in which said superior court of Cincinnati is located").

authorized." *Id.* at 8.

**{¶23}** The Ohio Supreme Court has never addressed the applicability of the discovery rule to a defamation claim. Nor has this court expressly ruled on the issue.[2] However, since 1983, the supreme court has applied the discovery rule to a variety of claims where application of the general rule that a cause of action exists from the time the wrongful act was committed "'would lead to the unconscionable result that the injured party's right to recovery [would] be barred by the statute of limitations before he is even aware of its existence.'" *O'Stricker*, 4 Ohio St.3d at 87, quoting *Wyler v. Tripi*, 25 Ohio St.2d 164, 168 (1971). For instance, the court has applied the discovery rule in the context of claims involving bodily injury caused by exposure to asbestos, medical malpractice claims, legal malpractice claims, claims for injuries arising out of the negligence of a hospital in credentialing a physician, certain sex-abuse claims, wrongful death claims, and claims involving employer intentional torts. *See, O'Stricker* at paragraph two of the syllabus ("When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10"); *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111 (1983), syllabus ("Under R.C. 2305.11[A], a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered the resulting injury"); *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210 (1983), syllabus ("Under R.C. 2305.11[A], a

---

2. Hildebrant argues this court rejected the discovery rule as the accrual event for a defamation cause of action in *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914 (12th Dist.). In *Daubenmire*, we stated, "[a] cause of action for slander accrues from the time the slanderous remarks are spoken, whether the defamed person has knowledge of the fact or not." *Id.* at ¶ 82, citing *Lyons v. Farmers Ins. Group of Companies*, 67 Ohio App.3d 448, 450 (3d Dist.1990). However, we were not asked to consider in *Daubenmire* whether the discovery rule was applicable to defamation actions.

cause of action for legal malpractice accrues and the statute of limitations commences to run when the client discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury"); *Browning v. Burt*, 66 Ohio St.3d 544 (1993), paragraph four of the syllabus ("The period of limitations set forth in R.C. 2305.10 commences to run when the victim knows or should have discovered that he or she was injured as a result of the hospital's negligent credentialing procedures or practices"); *Ault v. Jasko*, 70 Ohio St.3d 114, 1994-Ohio-376, paragraphs one and two of the syllabus ("The one-year statute of limitations period of sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused, or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse"); *Collins v. Sotka*, 81 Ohio St.3d 506 (1998), paragraphs one and two of the syllabus ("In a wrongful death action that stems from a murder, the statute of limitations begins to run when the victim's survivors discover, or through the exercise of reasonable diligence should have discovered, that the defendant has been convicted and sentenced for the murder"); *Norgard*, 2002-Ohio-2007 at syllabus ("A cause of action based on an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer").

{¶24} As the supreme court has acknowledged,

> "[u]se of the discovery rule eases the unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong. By focusing on discovery as the element which triggers the statute of limitations, the discovery rule gives those injured adequate time to seek relief on the merits without undue prejudice to * * * defendants."

*Ault* at 116, quoting *Oliver* at 114.

{¶25} Applying the above rationale expressed by the Ohio Supreme Court, one appellate district has found the discovery rule applicable to defamation cases. *See Dipillo*

*v. Cashen*, 6th Dist. Wood No. WD-83-23, 1983 Ohio App. LEXIS 11595 (Aug. 12, 1983). In *Dipillo*, a defendant was alleged to have written a letter to the city of Walbridge's mayor and council members on April 20, 1978. In the letter, the defendant claimed she heard the plaintiff, the city's chief of police, ask a female police dispatcher if she could get the mayor in a backroom and "set him up." *Id.* at *1. The defendant also claimed she heard the plaintiff say it would be funny to see the mayor lose his job and family. *Id.* In May 1978, the plaintiff resigned from his position as chief of police after being asked to do so. *Id.* Subsequently, on November 3, 1981, plaintiff brought suit against the defendant, alleging that the letter written by the defendant was defamatory and libelous. *Id.* at *2. Plaintiff contended that he had not become aware of the letter the defendant had written until April of 1981. *Id.* The trial court granted the defendant judgment on the pleadings, finding that the statute of limitations for the defendant's actions began to run on the date of the publication of the letter. *Id.* On appeal, the Sixth District reversed after finding that the discovery rule applied. The court stated, in relevant part, the following:

> We find the Ohio Supreme Court's analysis in *Oliver*, supra, *Skidmore & Hall*, supra, and *O'Stricker*, supra, applicable to the accrual of a libel action under R.C. 2305.11(A). Accordingly, we hold that under R.C. 2305.11(A), a cause of action for libel or slander accrues and the statute of limitations commences to run when the plaintiff discovers, or, in the exercise of reasonable care and diligence, should have discovered the resulting injury.

*Id.* at *3-4.

**{¶26}** A number of other jurisdictions apply the discovery rule to defamation claims where the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable due to the nature of the publication. *See, Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129 (Ill.1975) (credit report); *Kelley v. Rinkle,* 532 S.W.2d 947 (Tx.1976) (credit report); *Kittinger v. Boeing Co.*, 21 Wn. App. 484 (Wash.App.1978) (confidential business memorandum); *Manguso v. Oceanside*

*Unified School Dist.*, 88 Cal. App.3d 725 (Cal.App.1979) (confidential letter in employee file); *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397 (Md.App.1980) (credit report); *White v. Gurnsey*, 48 Ore. App. 931 (Ore.App.1980) (confidential memorandum in employee file); *Clark v. AiResearch Mfg. Co.*, 138 Ariz. 240, 242 (Ariz.App.1983) (recognizing discovery rule should be applied "in those situations in which the defamation is published in a manner in which it is peculiarly likely to be concealed from the plaintiff, such as in a confidential memorandum or a credit report"); *Staheli v. Smith*, 548 So.2d 1299 (Miss.1989) (confidential employer letter placed in employee's file was secretive or inherently unknowable); *Allen v. Ortez*, 802 P.2d 1307, 1314 (Utah 1990) (applying the discovery rule and finding the statute of limitations relating to a libelous letter "does not begin to run until the libel is known or is reasonably discoverable"); *Padon v. Sears*, 186 W.Va. 102 (W.Va.App.1991) (false criminal complaint resulting in arrest); *Leedom v. Bell*, Ten.App. No. 03A01-9704-CV-00136, 1997 Tenn. App. LEXIS 742 (Oct. 29, 1997) (confidential report by psychologist); *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21 (Okla.2001) (confidential letter).

{¶27} Of particular interest to this court is the Mississippi Supreme Court's decision in *Staheli v. Smith.* In *Staheli*, the plaintiff, a professor at a university, brought suit against a dean at the university, claiming the dean had defamed him in written recommendations against tenure and pay raise, thereby damaging the professor's professional reputation. *Staheli*, 548 So.2d at 1300. The defamatory statements were made in letters authored by the dean in late 1982, in April 1983, and May 1983. *Id.* at 1301. The plaintiff did not learn of the defamatory statements until the spring of 1984, when members of the faculty senate informed him that his file included derogatory comments. *Id.* The plaintiff was unable to view the letters until August 29, 1984, when he obtained them through discovery in a federal court action. *Id.* When the plaintiff brought suit for defamation, the dean moved for

summary judgment on the grounds that the defamation claim was brought outside the one-year statute of limitations. *Id.* at 1302. The trial court agreed and granted summary judgment in favor of the dean. *Id.*

{¶28} The Mississippi Supreme Court found that the trial court erred in granting summary judgment on the basis of the statute of limitations. *Id.* at 1303. Similar to Ohio's one-year statute of limitations for defamation claims, Miss. Code Ann. 15-1-35 provides that for "actions for slanderous words * * * and for libels, shall be commenced within one (1) year next after the cause of action accrued, and not after." The Mississippi Supreme court noted that the "general rule in Mississippi is that the statute of limitations begins to run from the date of publication of the allegedly libelous statement to third person." *Staheli* at 1302. However, the court found that the discovery rule should apply "in [those] limited class of libel cases in which, because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed." *Id.* at 1303. The court noted that "[i]n such rare instances, we do not believe that a plaintiff can be accused of sleeping on his rights." *Id.* The court determined that on the record before them, an issue of fact existed "as to whether [the professor] knew, or in the exercise of reasonable diligence should have discovered, that he had been defamed prior to the spring of 1984." *Id.*

{¶29} We agree with the *Staheli* court that a plaintiff who did not know, or with reasonable diligence could not have discovered, that he or she had been defamed due to the secretive nature of the libelous publication cannot be said to have been sleeping on his or her rights. *See also Norgard,* 2002-Ohio-2007 at ¶ 19 ("Once a plaintiff knows of an injury and the cause of the injury, the law gives the plaintiff a reasonable time to file suit. Yet if the plaintiff is unaware that his or her rights have been infringed, how can it be said that he or she slept on those rights?"). Therefore, applying the rationale expressed by the

Ohio Supreme Court in *O'Stricker*, *Oliver*, and the line of cases decided thereafter, we hereby hold that the discovery rule applies to those libel actions where the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable due to the nature of the publication. In such instances, a cause of action for defamation accrues when the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant. Application of the discovery rule in such instances eases the unconscionable result to a plaintiff who, by exercising even the highest degree of care, could not have discovered the wrongful conduct of the defendant. *See Oliver*, 5 Ohio St.3d at 114.

{¶30} We find that the adoption of the discovery rule does not amount to judicial legislation. As the supreme court noted in *O'Stricker*, "[a]bsent legislative definition, it is left to the judiciary to determine when a cause * * * [of action 'accrued']." *O'Stricker*, 4 Ohio St.3d at 87. *See also Oliver* at 116. "'The legislature * * * did not provide that the time of accrual was when the [defendant] performed the negligent act. This court did. The legislature left the matter undetermined. A determination that the time of accrual is the time of discovery is no more judicial legislation than a determination that it is the time of the commission of the act.'" *Id.*, quoting *Berry v. Branner*, 245 Ore. 307, 313 (Ore.1966).

{¶31} We further find, contrary to Hildebrant's arguments, that adopting the discovery rule in those limited instances where the publication of the defamatory statement was concealed or done in secret, rather than in a public manner or by means of mass media, does not create an unworkable rule. By limiting application of the rule to those instances where the publication was secretive, concealed, or otherwise inherently unknowable due to the nature of the publication, we have specifically tailored the rule to the particular context in which it is to be applied. *See Browning*, 66 Ohio St.3d at 559. In the overwhelming majority of cases, the discovery of defamatory statements in publicly available media, i.e.,

a website, book, magazine, or newspaper, will coincide with publication, making the date of publication the accrual date for a libel action. However, in those limited class of cases where the publication was concealed, made in secret, or was inherently unknowable to the plaintiff due to the nature of the publication, it is not the date of publication on which the libel action accrues. Rather, in those limited circumstances, the date on which the libel action accrues is the date that the plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant.

{¶32} In the present case, given the secretive manner in which Hildebrant went about publishing the defamatory remarks, Weidman could not have known about the libelous conduct and the injury resulting therefrom until November 18, 2020 – the date he met with investigators from the Auditor's Office. It was only at this time that Weidman learned of Hildebrant's creation of the 2011 email and his subsequent publication of the email to Roberts on December 20, 2011 and to LaBarbara and Warrick on January 25, 2020. Nothing presented by Hildebrant establishes that Weidman knew or should have known of the defamatory remarks he published prior to Weidman's meeting with the Auditor's investigators in November 2020. In fact, Hildebrant's own affidavit, which describes the circumstances in which he created and published the 2011 email, is evidence of the secretive nature of the publication.

{¶33} Accordingly, as Weidman filed his defamation claim within one year of discovering Hildebrant's publication of the defamatory 2011 email, we conclude that Weidman's defamation claim was timely filed. Having found application of the discovery rule appropriate under the circumstances of this case, we find it unnecessary to address Weidman's alternative argument that the fraudulent concealment doctrine applied to save his defamation claim.

**B. Weidman's IIED and False Light Invasion of Privacy Claims**

{¶34} Weidman also argues the discovery rule applies to his IIED and false light invasion of privacy claims. Alternatively, he contends a four-year statute of limitations applied to his IIED claim and that the time for bringing the claim did not begin to run until the injury occurred and the emotional impact was felt.

{¶35} "[I]n determining which [statute of] limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶36} "[C]ourts have held that because defamation and false light overlap, 'a false light invasion of privacy claim[] involving allegations that would also support a defamation claim has the same statute of limitations applied to it as the defamation claim.'" *Harvey v. Sys. Effect, LLC*, 2d Dist. Montgomery No. 28497, 2020-Ohio-1642, ¶ 37, quoting *Stainbrook v. Ohio Secy. of State*, 10th Dist. Franklin No. 16AP-314, 2017-Ohio-1526, ¶ 27. "The rationale for applying the one-year statute of limitations in these situations is that where the allegations 'would support both a defamation and a false-light invasion of privacy [claim], * * * [t]o hold otherwise would essentially eliminate the one-year statute of limitations for defamation claims under * * * [R.C.] 2305.11(A).'" *Id.* at ¶ 38, quoting *Stainbrook* at ¶ 28. Similarly, where an IIED claim is inextricably premised on the same allegations that support a defamation claim, "the applicable one-year statute of limitations for defamation also applies to the emotional distress claim." *Boyd v. Archdiocese of Cincinnati*, 2d Dist. Montgomery No. 25950, 2015-Ohio-1394, ¶ 51, citing *Ibenez v. Hutchins*, 10th Dist. Franklin No. 12AP-319, 2012-Ohio-5040, ¶ 9. *See also Ra v. Ohio Atty. Gen. Office*, 10th Dist. Franklin No. 19AP-533, 2020-Ohio-1346, ¶ 20-26 (finding an IIED claim and other tort claims were disguised defamation claims barred by a one-year statute of limitations).

**{¶37}** As the trial court correctly noted in its decision, Weidman's IIED and false light invasion of privacy claims "hinge on [Hildebrant's] publication of the 2011 email." The alleged conduct underlying Weidman's IIED and false light invasion of privacy claims cannot be separated from the virtually identical alleged conduct underlying his defamation claim. All three claims alleged that the publication of the defamatory 2011 email was done to cause harm to Weidman's reputation and cause him emotional distress. The IIED and false light invasion of privacy claims are therefore subject to the one-year statute of limitations contained in R.C. 2305.11(A) that applies to Weidman's defamation claim. However, just as the discovery rule applied to Weidman's defamation claim, we find it applicable to his IIED and false light invasion of privacy claim. *See Schmitz v. NCAA*, 155 Ohio St.3d 389, 2018-Ohio-4391, ¶ 35-36 (finding that the discovery rule applied to plaintiff's claims for negligence, fraudulent concealment, and constructive fraud and that all claims were governed by the negligence statute of limitation as "the alleged conduct underlying [the] fraudulent-concealment and constructive-fraud claims cannot be separated from the virtually identical alleged conduct underlying [the] negligence claim").

**{¶38}** As the IIED and false light invasion of privacy claims were filed within one year of Weidman discovering Hildebrant's creation, publication, and use of the defamatory 2011 email, we conclude that Weidman's IIED and false light invasion of privacy claims were timely filed. *See Schmitz* at ¶ 36.

### III. CONCLUSION

**{¶39}** For the reasons expressed above, we find the trial court erred in granting summary judgment to Hildebrant on the basis that Weidman's claims for defamation, IIED, and false light invasion of privacy were barred by the one-year statute of limitation set forth in R.C. 2305.11(A). Under the facts of this case, where the publication of the defamatory statement was secretive, concealed, or otherwise inherently unknowable due to the nature

of the publication, application of the discovery rule is appropriate. The trial court's decision

granting summary judgment to Hildebrant is reversed and the matter remanded for further

proceedings.

{¶40} Judgment reversed and the cause remanded.

M. POWELL, P.J., and PIPER, J., concur.